IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RENESAS TECHNOLOGY CORP.,<br><br>    Plaintiff,<br><br>      v.<br><br>SAMSUNG ELECTRONICS CO., LTD.<br>and<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>    Defendants. | C.A. No. 07-54-JJF |

**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC. OPENING BRIEF IN SUPPORT OF THEIR MOTION TO CONSOLIDATE AND STAY**

Dated: May 3, 2007

FISH & RICHARDSON P.C.
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
tdevlin@fr.com

Michael J. McKeon
Brian R. Nester (#3581)
Richard A. Sterba
Fish & Richardson P.C.
1425 K Street, N.W., 11th Floor
Washington, DC 20005-2500
(202) 783-5070

Attorneys for Defendants
SAMSUNG ELECTRONICS CO., LTD. and
SAMSUNG ELECTRONICS AMERICA, INC.

**TABLE OF CONTENTS**

**Page**

I.   NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

II.  SUMMARY OF ARGUMENT ........................................................................2

III. STATEMENT OF FACTS ................................................................................3

IV. ARGUMENT ....................................................................................................5

    A.   This Action Should Be Consolidated With the First Delaware Action ........................................................................5

        1.   Legal Standards ...............................................................5

        2.   The First and Second Delaware Actions Should Be Consolidated ...........................................................6

    B.   Regardless of Consolidation, this Action Should Be Stayed Along with the First Delaware Action .........................................9

        1.   Legal Standards ...............................................................9

        2.   All of the Factors Weigh in Favor of Staying This Action .......................................................................9

            a.   Staying This Action Would Not Be Prejudicial ............................................................10

            b.   A Stay Would Simplify the Case ..........................11

            c.   A Stay Will Not Interfere with Any Scheduled Dates .............................................12

V.   CONCLUSION ..............................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

*3M Co. v. Moldex-Metric, Inc.*,
   Civ. No. 06-4044 (MJD/AJB), 2006 WL. 3759758
   (D. Minn. Dec. 21, 2006)................................................................................6, 7

*Advanced Cardiovascular Sys. Inc. v. Medtronic, Inc.*,
   265 F.3d 1294 (Fed. Cir. 2001).............................................................................7

*Aero Products International, Inc. v. Intex Recreation Corp.*,
   466 F.3d 1000 (Fed. Cir. 2006).............................................................................8

*Alloc, Inc. v. Unilin Decor N.V.*,
   No. 03-253-GMS, 2003 WL. 21640372 (D. Del., July 11, 2003)..........9, 10 12

*Bechtel Corp. v. Laborers' Int'l Union*,
   544 F.2d 1207 (3d Cir. 1976).................................................................................9

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
   395 F.3d 1277 (Fed. Cir. 2002).............................................................................8

*Cheyney State Coll. Faculty v. Hufstedler*,
   703 F.2d 732 (3d Cir. 1983)..................................................................................9

*Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*,
   No. 5:05CV156, 2005 WL. 1126750 (N.D. Ohio Apr. 29, 2005) ........... passim

*Goldenberg v. Cytogen*,
   373 F.3d 1158 (Fed. Cir. 2004).............................................................................7

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
   No. 04-1337-KAJ, 2005 WL. 2465898 (D. Del. May 18, 2005).......................6

*International Bhd. of Elec. Workers v. AT&T Network Systems*,
   879 F.2d 864 (6th Cir. 1989) ................................................................................9

*Russo v. Alamosa Holdings, Inc.*,
   Nos. 03-CV-312-C, 03-CV-289-C, 03-CV-317-C, 04-CV-018-C, 04-
   CV-042-C, 2004 WL. 579378 (N.D. Tex. Feb. 27, 2004)................................6

*Waste Distillation Tech., Inc. v. Pan America Resources, Inc.*,
   775 F. Supp. 759 (D. Del. 1991)......................................................................5, 6

## STATUTES

28 U.S.C. § 1659(a) ..................................................................................................1, 10

Fed. R. Civ. P. 42(a) ...............................................................................................................5

Fed. R. Civ. P. 4(d)(2)............................................................................................................1

I.      NATURE AND STAGE OF THE PROCEEDINGS

On January 26, 2007, Plaintiff Renesas Technology Corp. ("Renesas") sued Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") in three related proceedings—an International Trade Commission ("ITC") investigation (Inv. No. 337-TA-595) and two patent infringement lawsuits before this Court (Civil Nos. 07-53-JJF and 07-54-JJF). Samsung agreed to waive service under Federal Rule of Civil Procedure 4(d)(2), and its Answer in this action is due on May 10, 2007. (D.I. 10.)

One of the cases in this Court involves the same patents asserted in the ITC, and all issues related to the patents in that case have been stayed pursuant to the mandatory stay provisions of 28 U.S.C. § 1659(a). (*See* 07-53-JJF, D.I. 17.) The second Delaware action asserts four patents, not asserted in the ITC, but which nevertheless share substantial overlapping issues with the patents in the ITC. The issues presented by this Motion are whether this Court should stay all issues related to the patents in this, the second Delaware action, so that they remain on the same consolidated track as the patents in the first Delaware action.

More specifically, in both the ITC proceeding and the first Delaware action, Civil No. 07-53-JJF, Renesas asserts infringement of U.S. Patent Nos. 7,115,344 (the "'344 patent") and 7,116,128 (the "'128 patent"). All issues related to these patents have been stayed within this Court pursuant to statute. (*See* 07-53-JJF, D.I. 17.) In the second Delaware action, Civil No. 07-54-JJF, Renesas originally asserted infringement of U.S. Patent Nos. 7,091,620 (the "'620 patent") and 7,106,092 (the "'092 patent"). One of these two patents (the '092 patent) is the parent of one of the two patents asserted in the ITC -- the '128 patent. Renesas later amended its Complaint in the second Delaware action to add two additional patents -- U.S. Patent Nos. 7,163,870 (the "'870 patent") and 7,187,039 (the "'039 patent") (D.I. 14.) The Samsung products accused of infringement in all three actions overlap.

II.     **SUMMARY OF ARGUMENT**

1.      The two Delaware cases at issue should be consolidated.  For purely tactical reasons, despite a substantial overlap of the issues, Renesas filed the two lawsuits in Delaware on the same day splitting the causes of action between two different cases.  Indeed, the two cases were originally identified by Renesas as "related cases" on their Civil Cover Sheets.  According to the Complaints, all of the patents relate to semiconductors and SDRAM, and the products accused of infringement in this Delaware action are also accused of infringement in the first Delaware action.  One of the patents asserted in the first Delaware action is a continuation of one of the patents asserted in this action, and so shares much of the same prosecution history and prior art.  The cases share common questions of law and fact, and consolidation would avoid many unnecessary costs, including duplicative discovery efforts, *Markman* proceedings, and dispositive motions.  While Samsung submits that there is no liability here, proceeding in two separate actions over patent disputes related to the same technology and accused products risks potential double recovery by Renesas as well as substantial juror confusion in the second Delaware case associated with instructions about "discounting" any recovery by Renesas in the first Delaware action (although we submit no such recovery is warranted at all).

2.      Whether or not the two Delaware actions are consolidated, all issues related to the four patents in this action (the '620, '092, '870, and '039 patents) should be stayed.  Given the substantial overlap in issues, the ITC's determinations regarding invalidity, unenforceability, inventorship and prior art may assist this Court by reducing the issues for discovery or trial in this action.  Additionally, the products accused of infringement in this action are also accused in the ITC.  Failure to stay this action will mean duplicative efforts in discovery, *Markman*, dispositive motions, and trial on many of the same issues, but at different periods of time.  A stay will put this case on the same

2

track as the first Delaware action, minimizing duplicate efforts and serving the interest of judicial economy and preserving the resources of the parties.

3.      As with all ITC cases, the matter is on a fast track to resolution – discovery is set to close on September 11, 2007 and a one-week hearing is set to commence just seven months from now on December 3, 2007.  The overlapping dispute in the ITC will clearly proceed more quickly to define the extent and nature of the dispute between the parties with resolution of the ITC case resulting, at a minimum, in the narrowing of the issues between the parties and, beyond that, likely lead to settlement, withdrawal, or dismissal of this case in its entirety.

4.      It makes no sense to forge ahead in the second Delaware action under these circumstances.  The Court should consolidate the two Delaware cases and stay all proceedings pending the outcome of the ITC matter.

## III.    STATEMENT OF FACTS

The ITC proceeding and the first Delaware action allege infringement of the '344 and '128 patents.  The '344 patent is entitled "Photomask and Pattern Forming Method Employing the Same" and the '128 patent is entitled "Semiconductor Device with Bus Terminating Function."  The patents asserted in this action cover similar subject matter and have similar titles: "Semiconductor Device with Bus Terminating Function," "Semiconductor Device and Manufacturing Method Thereof," and "Semiconductor Integrated Circuit Device."  All six patents are alleged to be infringed based on the same set of Synchronous Dynamic Random Access Memory ("SDRAM") products offered by Samsung.  (Exs. 1-6.)[1]

Specifically, in the ITC and first Delaware actions, Renesas asserts infringement of the '344 patent based on Samsung's "512 Mb DDR1," "512 Mb DDR2," and "1 Gb DDR2" products; and infringement of the '128 patent based on Samsung's "512 Mb

---

[1]  Exhibits cited in this brief are attached to the co-filed Declaration of Timothy Devlin in Support of Samsung's Opening Brief in Support of Its Motion to Stay.

3

DDR2"and "1 Gb DDR2" products. (Ex. 7; D.I. 1.) In other words, Renesas asserts that the method of manufacturing the accused products through use of a photomask, and the accused products themselves infringe the '344 and '128 patents. Similarly, Renesas contends in this action, the second Delaware action, that the '092 patent is infringed based on Samsung's "512 Mb DDR2" and "1 Gb DDR2" products, and that the '620, '870, and '039 patents are infringed based on Samsung's "512 Mb DDR2" products. (D.I. 1 and 14.)

The chart below sets forth a summary of patents in suit and accused products in the three actions, showing the substantial, and in certain circumstances identical, overlap in accused products:

| *Patent No.* | *Title* | *Case(s)* | *Accused Products* |
|---|---|---|---|
| 7,115,344 | Photomask and Pattern Forming Method Employing the Same | ITC, first Delaware action | 512 Mb DDR1, 512 Mb DDR2, 1 Gb DDR2 |
| 7,116,128 | Semiconductor Device with Bus Terminating Function | ITC, first Delaware action | 512 Mb DDR2, 1 Gb DDR2 |
| 7,106,092 | Semiconductor Device with Bust Terminating Function | Second Delaware action | 512 Mb DDR2, 1 Gb DDR2 |
| 7,091,620 | Semiconductor Device and Manufacturing Method Thereof | Second Delaware action | 512 Mb DDR2 |
| 7,163,870 | Semiconductor Integrated Circuit Device | Second Delaware action | 512 Mb DDR2 |
| 7,187,039 | Semiconductor Integrated Circuit Device | Second Delaware action | 512 Mb DDR2 |

The face of the '128 patent (asserted in the ITC) states that it is a continuation of the '092 patent (asserted in the second Delaware action). (Ex. 2.)[2] Because of this, these two patents share much of the same prosecution history. In addition, much of the same prior art was asserted during prosecution of both patents. There is also substantial overlap in the patents themselves. For example, the patents contain the same Abstract

---

[2] For purposes of the Motion to Consolidate and Stay, Samsung assumes that the face of the patent is correct and that the '128 patent is a continuation of the '092 patent. Samsung reserves the right to challenge whether the '128 patent is in fact a continuation or a continuation in part of the '092 patent, and reserves rights on all

4

and Figures. The specifications are virtually identical, apart from a single added paragraph found in the Background section of the later patent. The two patents also include many common claim terms, for example "a pad," "a terminating circuit," "a first voltage node," "a first drain impurity region," and "a memory circuit." (*See* Exs. 2 and 3.) Despite these many similarities and obviously overlapping issues, Renesas asserted these two related patents in two separate lawsuits filed on the same day.

The ITC case is now moving fast ahead. The preliminary conference before the Honorable Paul J. Luckern occurred on April 19, 2007. During the conference, the Court expressed concern about the potential overlap between the case. (*See* Transcript of Preliminary Conference at 14:20-20:6, In the Matter of Certain Dynamic Random Access Memory Devices and Products Containing Same, ITC Inv. No. 337-TA-595 (2007), Ex. 8.)

Subsequent to the conference, Judge Luckern issued a scheduling order setting the close of discovery on September 11, 2007 and a hearing to commence on December 3, 2007. (*See* Order No. 6, Ex. 9.) The investigation has been assigned a 15-month period for determination by the ITC.

IV.  ARGUMENT

    A.  **This Action Should Be Consolidated With the First Delaware Action**

        1.  **Legal Standards**

Cases may be consolidated when they involve "a common question of law or fact" in order "to avoid unnecessary costs or delay." FED. R. CIV. P. 42(a).

This Court has "broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice." *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991) (citing *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673,

---

    other related issues (for example whether the patent specification provides sufficient support for the claims of the continuation).

675 (3d Cir. 1964)); *see also Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, No. 04-1337-KAJ, 2005 WL 2465898, at *2 (D. Del. May 18, 2005). The Court must balance the savings of time and effort gained through consolidation against the inconvenience, delay or expense that may result from simultaneous disposition of the separate actions. *Waste Distillation Tech.*, 775 F. Supp. at 761.

In determining whether to grant a motion for consolidation, courts have considered the following factors:

> (1) the cases proposed for consolidation are pending either before the same court for all purposes or before two different courts within the same judicial district; (2) the cases involve a common party; (3) the cases involve common issues of law and/or fact; (4) there is no risk of prejudice or possible confusion if the cases are consolidated, or if there is any risk, it is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately; (5) consolidation will not result in an unfair advantage; (6) consolidation will conserve judicial resources; (7) consolidation will reduce the time for resolving the cases when compared to separate trials; and (8) consolidation will reduce the expense of trying the cases separately.

*Russo v. Alamosa Holdings, Inc.*, Nos. 03-CV-312-C, 03-CV-289-C, 03-CV-317-C, 04-CV-018-C, 04-CV-042-C, 2004 WL 579378, at *1 (N.D. Tex. Feb. 27, 2004).

### 2. The First and Second Delaware Actions Should Be Consolidated

Literally every factor set forth above weighs in favor of consolidation of this action. The first and second Delaware actions at issue are both before this Court and involve the same parties, same types of claims (and likely defenses), common products, and patents that share the same prior art and even prosecution histories. There can be no legitimate dispute that consolidation will streamline the development of the issues, reduce the amount of time required, minimize expenses, and conserve judicial resources.

Courts have granted motions to consolidate in similar circumstances. For example, in *3M Co. v. Moldex-Metric, Inc.*, Civ. No. 06-4044 (MJD/AJB), 2006 WL 3759758 (D. Minn. Dec. 21, 2006), plaintiff 3M filed a suit against Moldex-Metric alleging infringement of three patents related to exhaust valves for breathing devices. *Id.*

6

at *1.  Later, 3M filed another suit against Moldex-Metric in the same court alleging infringement of two additional patents, one of which was a continuation of a patent in suit in the first action and the second of which related to methods of attaching exhaust valves to other components.  *Id.* at *1.

The court found that the cases shared a common question of law because they pertain to 3M's infringement claims against Moldex-Metric and they share a common question of fact because of the overlapping patents asserted in the cases.  *Id.* at *2.  The court also concluded that the damage analyses would be identical in both cases as a result of the same Moldex-Metric product being accused and the same 3M competing product being considered.  *Id.* at *2.  The cases were therefore consolidated.  *Id.* at *2.

Those same reasons support consolidation of the two Delaware actions here.  The '128 patent asserted in the first Delaware action is a continuation of the '092 patent asserted in the second Delaware action.  As discussed above, these patents have substantially the same specifications and many overlapping claim terms.  (*See* Exs. 2 and 3.)  Further, the prosecution history of the '092 patent is part of the prosecution history of the '128 patent, and will therefore be relevant to issues in both actions.  *See Goldenberg v. Cytogen*, 373 F.3d 1158, 1167 (Fed. Cir. 2004) (the prosecution history of a parent application is considered "as part of the intrinsic evidence" of the child application when construing claim terms); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1305 (Fed. Cir. 2001) ("The prosecution history of a related patent can be relevant if, for example, it addresses a limitation in common with the patent in suit.").

Indeed, there is overlap between all of the patents asserted in the two Delaware actions.  Each of the patents shares claim terms with other patents in suit.  For example, the terms "semiconductor device" or "semiconductor integrated circuit device" and "substrate" appear in the claims of the '620, '128, '344, '870, and '039 patents.  As another example, the terms "circuit," "film," "interconnection" or "interconnector," and "not functioning as a semiconductor element" or "not functioning as an element" appear

7

in some of the patents. Discussed previously, the '092 and '128 patents have common claim terms, such as "a pad," "a terminating circuit," "a first voltage node," "a first drain impurity region," and "a memory circuit." (*See* Exs. 2 and 3.) All of the patents are also asserted against identical and products. Thus they will present overlapping issues of law and fact on claim construction, infringement, invalidity and damages.

      Further, in both Delaware actions, Renesas attempts to recover damages arising from the same operative facts - alleged patent infringement based on the same accused products and their manufacture. Even though Renesas' complaint has no merit and no recovery is warranted at all, if the Delaware actions proceed separately and in the unlikely, erroneous event damages are awarded, there is a substantial risk of an improper award of double recovery by Renesas (although, as noted, in light of the absence of liability, Reneses is entitled to recover nothing). *See Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 395 F. 3d 1277, 1289-92 (Fed. Cir. 2002) (preventing double recovery based on the sale of tree torchiere lamps when the sale of the lamps infringed two different patents.); *see also Aero Products Int'l, Inc. v. Intex Recreation Corp.*, 466 F. 3d 1000, 1017 (Fed. Cir. 2006) (holding impermissible the double recovery of damages). Even efforts to minimize that risk by providing jury instructions on "discounting" likely would be prejudicial and result in juror confusion, invariably resulting in substantial post-trial motion practice and appeals on this issue alone. Of course, two separate actions also undermines judicial economy because the Court would be required to hear the same evidence twice regarding the accused products.

      There is no factor weighing against consolidation. It is unlikely that any prejudice or possible confusion would exist if the two Delaware cases were consolidated. Given the overlapping patents and products at issue, any such confusion is outweighed by the benefits of consolidation. Similarly, no party would obtain any unfair advantage if the cases were consolidated. Both parties could move forward on the two patents asserted in

the ITC, and then could address any remaining issues, if any, in this Court after the ITC proceedings.

In short, all of the factors to be considered establish that consolidation is appropriate. The first and second Delaware actions should be consolidated.

### B. Regardless of Consolidation, this Action Should Be Stayed Along with the First Delaware Action

#### 1. Legal Standards

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *See Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737 (3d Cir. 1983). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *See Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976). In addition, "'[a] district court has discretion to determine whether a stay is necessary to avoid piecemeal, duplicative litigation and potentially conflicting results.'" *Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.*, No. 5:05CV156, 2005 WL 1126750, at *2 (N.D. Ohio Apr. 29, 2005) (quoting *International Bhd. of Elec. Workers v. AT&T Network Sys.*, unreported, 879 F.2d 864 (6th Cir. July 17, 1989)).

When deciding a motion to stay, the court should consider three factors "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Alloc, Inc. v. Unilin Decor N.V.*, No. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del., July 11, 2003) (internal quotation omitted).

#### 2. All of the Factors Weigh in Favor of Staying This Action

The Court has already stayed the first Delaware action. (*See* 07-53-JJF, D.I. 17.) The same circumstances that support consolidation, set forth above, also support a stay

on the four patents in this action (regardless of whether the two cases are consolidated). The only issue here is whether the four patents in this case should proceed on a separate schedule, or whether they should also be stayed so that all six patents move forward on the same schedule. As set forth below, each of the three enumerated factors supports staying the four patents in this action.

### a. Staying This Action Would Not Be Prejudicial

Renesas will not be unduly prejudiced by staying this action. Courts have found that no prejudice resulted from staying cases such as this. *See, e.g., Flexsys*, 2005 WL 1126750, at *3; *Alloc*, 2003 WL 21640372, at *3. In *Flexsys*, the Court faced a similar factual pattern of certain patents being asserted in both the ITC and district court, while another patent (referred to as the "Missing Patent") was asserted only in the district court. *Flexsys*, 2005 WL 1126750, at *1-2. The Court rejected the notion that the plaintiff would be prejudiced by staying the Missing Patent, and frowned upon the tactic of asserting only some of the patents in district court:

> [T]he Court finds that plaintiff will not be prejudiced by a stay of this case. It is entirely unclear to this Court why plaintiff would opt to pursue only two of the three continuation patents before the ITC, other than in an attempt to avoid the mandatory stay requirements of 28 U.S.C. § 1659(a).

*Id.* at *3.

In *Alloc*, certain patents were under reexamination at the U.S. Patent and Trademark Office ("USPTO") and the subject of an appeal to the Federal Circuit from an ITC decision. *Alloc*, 2003 WL 21640372, at *1. The plaintiff then filed suit alleging infringement of a patent that was a continuation of the patents at issue in the ITC and under reexamination. *Id.* at *1. The Court concluded that a stay on the continuation patent would not prejudice the plaintiff, and that a stay was appropriate. "[A] stay at this point in the case would not unduly prejudice the plaintiffs or create for them a clear

tactical disadvantage.  Indeed, a stay will allow the issues before the court to be further simplified and defined to the benefit of the parties, as well as the court." *Id.* at *3.

On the other hand, Samsung would be prejudiced if this action were allowed to proceed, because it would be forced to litigate overlapping issues in two separate courts simultaneously.  The *Flexsys* court noted this factor, holding that "requiring defendants to litigate both this case and the ITC action at the same time will result in prejudice." *Flexsys*, 2005 WL 1126750, at *3.  Moreover, if this action were not stayed, Samsung could be required to relitigate many of the same issues twice – once now during this action, and then again when the first Delaware action picks up after the ITC.  Given the overlap in the patents, a substantial amount of discovery, claim construction and other proceedings would be repeated after the mandatory stay of the first Delaware action is lifted.

It is Renesas that created this issue by filing two separate actions on a common set of patents.  Renesas could have filed these six patents together in Delaware but chose not to, purely for tactical reasons including minimizing the chance of stay and maximizing its chance of double recovery against Samsung.  Samsung should not be prejudiced by Renesas' improper tactical decision to file separate litigations on overlapping patents.

### b. A Stay Would Simplify the Case

A stay will simplify the issues involved.  The six patents in the various suits have an overlapping or related set of claim terms, specifications, file histories, prior art, and accused products.  Two of the patents – one in each Delaware action – are in the same continuation string.  All six patents in suit in the cases are asserted against semiconductors and SDRAM products and their manufacture, and the specific products overlap.  A substantial amount of discovery and issues in both Delaware actions are the same.  For example, there will undoubtedly be common witnesses, including the same inventor on the '128 and '092 patents, and experts and witnesses providing information

about the accused products and their manufacture. Staying this case would avoid piecemeal, duplicative litigation.

Treating all of the patents together will reduce duplication and complexity, and minimize the burden on the Court for discovery issues, *Markman* proceedings, dispositive motions and trial. Staying issues now may even help to resolve them. Because the accused products in this action are also accused products in the ITC proceeding, the conclusion of the ITC proceeding may narrow the issues in dispute, or even result in the settlement, withdrawal, or dismissal of the entire case.

These factors supported the decisions to stay in both the *Flexsys* and *Alloc* cases. In *Flexsys*, the Court noted that the Missing Patent was "part of a series of continuation patents" including two of the patents before the ITC and many of the claim terms overlapped. *Flexsys*, 2005 WL 1126750, at *3. In addition, the ITC would decide issues regarding claim construction, invalidity, and prior art, and the court "would benefit tremendously from a narrowing of the complex issues in this case." *Id.* at *3. Further, if the court only proceeded with the Missing Patent, the case "would essentially be relitigated after the lifting of the mandatory stay" on the other two patents. *Id.* at *3. Similarly, in *Alloc*, the Delaware District Court held that "there is a sufficient correlation among all of the patents for the court to conclude that a stay is appropriate." *Alloc*, 2003 WL 21640372, at *2.

### c. A Stay Will Not Interfere with Any Scheduled Dates

Third, a stay of this case will not interfere with any scheduled trial dates or other dates. This case is at its inception. There is no harm in granting a stay at this early stage. The *Alloc* court found that these factors weighed in favor of a stay, holding that a discovery schedule had not been entered, discovery had not begun, and no trial date was set, so the stay was entered prior to the parties incurring "substantial litigation-related expenses." *Id.* at *3.

Conversely, as discussed above, failure to stay this case increases the risk of duplicate efforts, wasted resources and inconsistent results. Absent any compelling reason to the contrary, there is simply no reason to prosecute this action while the ITC proceeding is pending.

## V. CONCLUSION

For the reasons set forth above, the Court should grant Defendants' Motion to Consolidate and Stay.

Dated:  May 3, 2007                           FISH & RICHARDSON P.C.

By:   */s/ Timothy Devin*
     Timothy Devlin (#4241)
     919 N. Market Street, Suite 1100
     P.O. Box 1114
     Wilmington, DE  19899-1114
     Telephone: (302) 652-5070
     Facsimile:  (302) 652-0607

     Michael J. McKeon
     Brian R. Nester (#3581)
     Richard A. Sterba
     Fish & Richardson P.C.
     1425 K Street, N.W., 11th Floor
     Washington, DC  20005-2500
     (202) 783-5070

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd. And*
*Samsung Electronics America, Inc.*

80044615.doc

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2007, I electronically filed the above document with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to the following Delaware counsel. In addition, the filing will also be sent via hand delivery:

Andre G. Bouchard
John M. Seaman
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Ave., Suite 1400
Wilmington, DE 19801

I hereby certify that on May 3, 2007, I have mailed by Federal Express, the document(s) to the following non-registered participants:

Christopher E. Chalsen
Michael M. Murray
James R. Klaiber
MILBANK, TWEED, HADLEY & MCCLOY, LLP
1 Chase Manhattan Plaza
New York, NY 10005

                                                       */s/ Timothy Devlin*
                                                       Timothy Devlin