# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

RENESAS TECHNOLOGY CORP.,

   Plaintiff,

     v.

SAMSUNG ELECTRONICS CO., LTD.,
         -and-
SAMSUNG ELECTRONICS AMERICA, INC.,

   Defendants.

C.A. No. 07-54-JJF

## PLAINTIFF RENESAS TECHNOLOGY CORP.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO CONSOLIDATE AND STAY

DATED:  June 13, 2007

BOUCHARD MARGULES & FRIEDLANDER, P.A.
Andre G. Bouchard (#2504)
John M. Seaman (#3868)
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
abouchard@bmf-law.com
jseaman@bmf-law.com
(302) 573-3500

MILBANK, TWEED, HADLEY & MCCLOY LLP
Christopher E. Chalsen
Michael M. Murray
James R. Klaiber
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
Fax: (212) 530-5219

Attorneys for Plaintiff
Renesas Technology Corp.

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ...................................................................... ii

I.    SUMMARY OF ARGUMENT ........................................................1

II.   STATEMENT OF FACTS ...............................................................2

III.  ARGUMENT ...................................................................................3

      A.    This Action Should Not Be Consolidated With Civil Action No.
            07-53-JJF ............................................................................3

            1.    Applicable Law ........................................................3

            2.    The Lack of Time and Effort Saved and Complexity of the
                  Actions Justify Denying Consolidation ...........................3

            3.    Samsung's Double Recovery Arguments Provide No
                  Support for Consolidation .................................................5

      B.    This Action Should Not Be Stayed ...........................................6

            1.    Applicable Law ........................................................6

            2.    Renesas Would Be Unduly Prejudiced and Put In a Tactical
                  Disadvantage if the Court Stayed the Present Action ......7

            3.    A Stay Would Not Simplify the Issues in the Present
                  Action .........................................................................9

            4.    The Stage of the Present Suit Provides No Support for a
                  Stay ............................................................................11

IV.   CONCLUSION ..............................................................................12

## <u>TABLE OF AUTHORITIES</u>

### CASES

*3M Co v. Moldex-Metric, Inc.*,
2006 WL 3759758 (D. Minn. Dec. 21, 2006)................................................................ 3

*Alloc, Inc. v. Unilin Decor N.V.*,
2003 WL 21640372 (D. Del. July 11, 2003) ........................................................... 9, 11

*Bowers v. Baystate*,
320 F.3d 1317 (Fed. Cir. 2003)...................................................................................... 5

*Catalina Lighting v. Lamps Plus, Inc.*,
295 F.3d 1277 (Fed. Cir. 2002)...................................................................................... 6

*Cedars-Sinai Medical Center v. Revlon, Inc.*,
111 F.R.D. 24 (D. Del. 1986) ....................................................................................... 3

*Clinton v. Jones*,
520 U.S. 681 (1997)........................................................................................................ 6

*Flexsys Americas, LP v. Kumho Tire U.S.A., Inc.*,
2005 WL 1126750 (N.D. Ohio Apr. 29, 2005)........................................................... 8, 9

*Furminator, Inc. v. Ontel Prods. Corp.*,
2006 U.S. Dist. LEXIS 67812 (E.D. Mo. 2006) ......................................................... 10

*In re Princo Corp.*,
478 F.3d 1345 (Fed. Cir. 2007)...................................................................................... 5

*Kearns v. GMC*,
94 F.3d 1553 (Fed. Cir. 1996)........................................................................................ 7

*Landis v. North American Co.*,
299 U.S. 248 (1936)........................................................................................................ 6

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.*,
143 F.R.D. 553 (D. Del. 1992) ................................................................................... 4, 5

*Micron Tech., Inc. v. Mosel Vitelic Corp.*,
1999 U.S. Dist. LEXIS 4792 (D. Idaho Feb. 19, 1997).......................................7, 8, 10

*Organon Teknika Corp. v. Hoffmann La Roche, Inc.*,
1997 U.S. Dist. LEXIS 3798 (M.D.N.C. Feb. 19, 1997).............................................. 8

*Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*,
2006 U.S. Dist. LEXIS 64698 (N.D. Tex. Sept. 11, 2006)......................................... 11

*Syngenta Seeds, Inc. v. Monsanto Co.*,
2004 U.S. Dist. LEXIS 17821 (D. Del. Aug. 27, 2004) ........................................... 3, 5

*Texas Instruments v. Cypress Semiconductor Corp.*,
90 F.3d 1558 (Fed. Cir. 1996)..................................................................................... 11

*Zoetics, Inc. v. Yahoo!, Inc.*,
2006 U.S. Dist. LEXIS 46910 (D. Del. July 6, 2006) ............................................ 7, 12

### STATUTES

28 U.S.C. § 1659(a) ........................................................................................... 1, 5, 8

**RULES**

Fed. R. Civ. P. 42(a) .......................................................................................................... 3

Plaintiff Renesas Technology Corp. ("Renesas") hereby opposes and answers Defendants' Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") Motion To Consolidate And Stay.

## I.    SUMMARY OF ARGUMENT

The present action should be neither consolidated nor stayed. The present action should not be consolidated with Civil Action No. 07-53-JJF, which is stayed pursuant to 28 U.S.C. § 1659(a) and by stipulation of the parties "until the determination of ITC Investigation No. 337-TA-595 becomes final." That action was stayed because the patents involved in that case are the very same as the patents involved in the ITC investigation. By clear contrast, none of the patents asserted in the present action (i.e., U.S. Patent Nos. 7,091,620 (the "'620 patent"); 7,106,092 (the "'092 patent"); 7,163,870 (the "'870 patent"); and 7,187,039 (the "'039 patent")) are involved in the ITC case and therefore this case is not subject to the statutory stay requirement. Indeed, Samsung did not even move to stay this case under 28 U.S.C. § 1659(a). The patents involved in this action are not involved in the ITC action and are directed to different inventions. There could be no savings of time or effort from consolidation with the stayed case. Rather, a consolidation would needlessly increase the complexity of these infringement actions by conflating the issues of the two cases and delaying the resolution of the issues involved in the present case.

Furthermore, the present action plainly should not be stayed. Again, none of the patents asserted in the present action are at issue in the ITC proceeding. The '620, '870, and '039 patents have absolutely no relation to the patents (i.e., the '128 and '344 patents) in the ITC or 07-53-JJF proceedings. The claims, specifications, prosecution histories and inventors of these patents are entirely different. In addition, the numerous

differences in the claim terms of the '092 patent and the '128 patent far outweigh any similarities in these claims.

Imposing a stay in the present action would prejudice plaintiff Renesas by drastically postponing its ability to enforce its '620, '092, '870, and '039 patents against Samsung. A decision in the ITC proceeding is not due until June 2, 2008, with any appeals to the Federal Circuit likely more than a year beyond that. Renesas should be permitted to obtain redress from Samsung's infringement of Renesas's '620, '092, '870, and '039 patents without having to first obtain a resolution on Renesas's '344 and '128 patents. There is no substantial justification for preventing the present action from proceeding in parallel with the ITC matter, as they concern completely different patents and different available remedies.

## II.    STATEMENT OF FACTS

The present action alleges infringement of the '620, '092, '870, and '039 patents. (*See* Declaration of John M. Seaman ("Seaman Decl."), Exhs. 1-4.) The '620, '870 and '039 patents have no relation to the '344 or '128 patents (Seaman Decl., Exhs. 5-6) involved in the ITC case. The inventors of the '620 patent are Chuichi Miyazaki, Yukiharu Akiyama, Masnori Shibamoto, Tomoaki Kudaishi, Ichiro Anjoh, Kunihiko Nishi, Asao Nishimura, Hideki Tanaka, Ryosuke Kimoto, Kunihiro Tsubosaki, and Akio Hasebe. The inventors of the '870 and '039 patents are Yasushi Koubuchi, Koichi Nagasawa, Masahiro Moniwa, Youhei Yamada, and Toshifumi Takeda. None of these individuals are inventors of the '344 or '128 patents.

Although the '092 patent derives from the same application family as the '128 patent, it is a completely different patent containing different claims from the '128 patent. (*See* Seaman Decl., Exhs. 2 & 6.)

III.   **ARGUMENT**

    A.   **This Action Should Not Be Consolidated With Civil Action No. 07-53-JJF**

        1.   **Applicable Law**

Courts may consolidate actions involving a "common question of law or fact" and "make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a).

However, the mere existence of common issues, although a prerequisite to consolidation, does not mandate a joint trial. The court must balance the savings of time and effort gained from consolidation against the inconvenience, delay, or expense that might result from simultaneous disposition of the separate actions. *Cedars-Sinai Medical Center v. Revlon, Inc.*, 111 F.R.D. 24, 32 (D. Del. 1986).

In *Syngenta Seeds, Inc. v. Monsanto Co.*, 2004 U.S. Dist. LEXIS 17821, at *3-5 (D. Del. Aug. 27, 2004), this Court denied consolidation of two infringement actions even though one patent was a continuation of the other asserted patent, the patents had the same inventors and had specifications that were "virtually identical." The court found that "[a]dding another patent to the plaintiff's claims will only <u>increase</u> the case's complexity and make it that much harder for a jury to come to a resolution" and thus "consolidation of the two cases would be more burdensome than beneficial." *Id.* at * 5. (emphasis added).

        2.   **The Lack of Time and Effort Saved and Complexity of the Actions Justify Denying Consolidation**

Consolidation would provide no savings of time and effort as both actions are in their initial stages. The present action is unlike *3M Co v. Moldex-Metric, Inc.*, 2006 WL 3759758, at *2 (D. Minn. Dec. 21, 2006), where "much of the same discovery from 2003

Action can be used in the 2006 Action."  Here, discovery has just begun and the issues in the present action have not begun to take shape.  Thus, consolidation would not provide any savings of time and effort.

Consolidation would result in prolonged delay and unnecessary prejudice to Renesas.  Since Civil Action No. 7-53-JJF is stayed "until the determination of ITC Investigation No. 337-TA-595 becomes final," consolidation of the two actions would effectively stay the present action and permit Samsung to continue to infringe the '620, '092, '870, and '039 patents while the ITC resolves infringement on entirely different patents.

A more appropriate course would be to follow *Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553 (D. Del. 1992), where this court denied a motion to consolidate two infringement actions involving the same parties.  In *Foster Wheeler*, the Court rejected consolidation although it found some "common issues of fact and law" and that the two suits' claims were "supported or refuted by some overlapping evidence." *Id.* at 558.  Despite these similarities, the Court concluded that joint adjudication of the claims would "underly complicate the intrinsically complex factual and legal issues at bar" and denied consolidation.  *Id.* at 559 (emphasis added).

The Court should deny Samsung's motion to consolidate for the same reasons. Not only are the legal and factual similarities between the Delaware Actions minimal at best, consolidation of these cases would unnecessarily complicate the already complex issues involved.  The present action currently includes four patents involving sixteen inventors.  Indeed, consolidation of these actions would unnecessarily require this Court—and inevitably a jury—to consider two additional patents involving three

additional inventors.  *See, e.g.*, *Syngenta Seeds,* 2004 U.S. Dist. LEXIS 17821, at *5 (D.

Del. Aug. 27, 2004) ("Adding another patent to the plaintiff's claims will only <u>increase</u>

the case's complexity and make it that much harder for a jury to come to a resolution."

(emphasis added)).  Moreover, the substantial amount of discovery already awaiting both

parties in this case will grow exponentially in the wake of consolidation.  To prevent this

unnecessary complication of the matters at bar, this Court should deny Defendant's

motion to consolidate in accordance with its holding in *Foster Wheeler*.

> 3.    **Samsung's Double Recovery Arguments Provide No Support for Consolidation**

Samsung's alleged fear concerning the risk of "double recovery" is disingenuous.

(*See* Defs.' Opening Br. at 8.)  First, the same judge is handling both cases and will be

aware of the events in the other suit.  Second, double recovery is not currently even

possible because no damages are available in the ITC proceeding and the 07-53-JJF

action is stayed pursuant to 28 U.S.C. § 1659(a) and will not proceed until the ITC's

determination "becomes final," including appellate review by the Federal Circuit.  (07-

53-JJF, D.I. 17); *see In re Princo Corp.*, 478 F.3d 1345, 1357 (Fed. Cir. 2007)

(interpreting § 1659(a)'s language "until the determination . . . becomes final" to require

district court to maintain stay until proceedings before Commission, including appeals,

becomes final).

"The law is clear that the jury may award separate damages for each claim,

'leaving it to the judge to make appropriate adjustments to avoid double recovery.'"

*Bowers v. Baystate*, 320 F.3d 1317, 1327 (Fed. Cir. 2003)  "So long as a plaintiff is not

twice compensated for a single injury, a judgment may be comprised of elements drawn

from separate ... remedies."  *Id.* at 1328.

The authority cited by Samsung simply does not support consolidation, as none of these decisions suggest that consolidation could have prevented double recovery. For example, in *Catalina Lighting v. Lamps Plus, Inc.*, the court merely held that after finding that the defendant's product infringed both a utility patent and a design patent, the plaintiff may receive the infringer's profits for infringement of the design patent under § 289 but cannot also recover a reasonable royalty on the utility patent. 295 F.3d 1277, 1291 (Fed. Cir. 2002). This Court can certainly consider any alleged double recovery issue that might arise in the 07-53-JJF action after infringement is redressed in the present action. Thus, Samsung's double recovery concern provides no support for consolidation.

In view of the inconvenience, delay, and expense that would be caused by consolidation, coupled with the increase in complexity and the lack of any savings in time, this case should not be consolidated with the 07-53-JJF action.

### B.    This Action Should Not Be Stayed

#### 1.    Applicable Law

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Thus, the moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255 (emphasis added).

"In ruling on a motion to stay, courts are guided by three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Zoetics, Inc. v. Yahoo!, Inc.*, 2006 U.S. Dist. LEXIS 46910, at *4 (D. Del. July 6, 2006) (Farnan, J.) (citations omitted).

> ### 2.    Renesas Would Be Unduly Prejudiced and Put In a Tactical Disadvantage if the Court Stayed the Present Action

Renesas would certainly be heavily prejudiced if the Court stayed the present action. If the Court were to stay all proceedings pending final resolution of the ITC proceeding, Samsung would be allowed to continue to infringe Renesas's '620, '092, '870, and '039 patents without affording Renesas any recourse in the courts on each of these patents. *See Kearns v. GMC*, 94 F.3d 1553, 1555 (Fed. Cir. 1996) ("Each patent asserted raises an <u>independent and distinct</u> cause of action." (emphasis added)).

At least one court faced with circumstances nearly identical to those the present action has refused to institute a stay. *See Micron Tech., Inc. v. Mosel Vitelic Corp.*, 1999 U.S. Dist. LEXIS 4792 (D. Idaho Feb. 19, 1997). In *Micron*, the court was faced with a motion to stay a lawsuit involving eleven asserted patents and rejected staying discovery on the seven patents that were not a part of an ITC investigation because the Defendants did not establish that a stay was necessary to prevent undue hardship or injustice. *Id.* at *14. The *Micron* court noted that all eleven patents at issue were alleged to be infringed by two of Defendants' products and were related to the same basic technology field. *Id.* at *7. The court also mentioned that Defendants had initiated their own third lawsuit,

showing that they had the ability to litigate the ITC proceeding and district court case at the same time. *Id.* at *12.

All of these facts are present here. Samsung alleges no hardship or injustice caused by litigating the '620, '092, '870, and '039 patents in parallel with the ITC investigation. And unlike *Micron*, where the same two accused products were alleged to infringe all eleven asserted patents, Samsung can only allege that some of the infringing products are common to all asserted patents. Like the defendant in *Micron*, Samsung has initiated its own additional lawsuits against Renesas (in both this Court and the ITC) demonstrating its ability to litigate multiple cases at once. Accordingly, this Court should follow the reasoning of *Micron* and deny Samsung's request for a stay of this action.

Furthermore, as noted above, <u>none</u> of the patents in the present action are at issue in the ITC investigation. Therefore, unlike the 07-53-JJF action, the provisions of 28 U.S.C. § 1659(a) do not apply to the present action. *See Organon Teknika Corp. v. Hoffmann La Roche, Inc.*, 1997 U.S. Dist. LEXIS 3798, at *6-7 (M.D.N.C. Feb. 19, 1997) ("Section 1659 does not apply to this request because these patents are not at issue in both proceedings."). Furthermore, the present case is unlike *Flexsys Americas, LP v. Kumho Tire U.S.A., Inc.*, 2005 WL 1126750 (N.D. Ohio Apr. 29, 2005), where three of the four patents asserted in the district court case were also asserted in an ITC case, and the fourth patent was related to patents asserted in the ITC case. Thus, the procedural situation here is unlike that of *Flexsys*, where a "majority [was] subject to a statutory stay."[1]

---

[1] Even if the present action were improperly consolidated with Civil Action No. 07-53-JJF, *Flexsys* would still be irrelevant because only two of the six patents in a consolidated case would be subject to a statutory stay and not a majority of the patents as in *Flexsys*.

Samsung's reliance on *Alloc, Inc. v. Unilin Decor N.V.*, 2003 WL 21640372 (D. Del. July 11, 2003) is misplaced because that suit involved only <u>one</u> asserted patent, which was a continuation of other patents that were undergoing reexamination before the PTO and on appeal before the Federal Circuit. Here, three of the four asserted patents have no relation to the patents in <u>any</u> other proceeding. Furthermore, the *Alloc* court relied on the imminent decisions of the PTO and the Federal Circuit to find a lack of prejudice. By contrast, the target date for a decision by the ITC is set at June 2, 2008, with a final decision based on any appeal to the Federal Circuit likely to be as late as the spring of 2009. Thus, unlike the situation in *Alloc*, Renesas would suffer extreme prejudice because a stay would prolong the period for Samsung to infringe Renesas's '620, '870, and '039 patents, which have no relation to patents in any other proceedings.

**3.      A Stay Would Not Simplify the Issues in the Present Action**

A stay will not simplify the issues because the vast majority of the issues in this action are not present in the ITC proceeding. Even though Samsung asserts that claim terms, prior art, and other issues in this action and the ITC proceeding overlap, such overlap is minimal and insignificant in comparison with the cases relied on by Samsung.

Three of the four asserted patents have no relation to the patents in the ITC proceeding and none of the sixteen inventors of the '620, '870, and '039 patents are inventors of the '344 and '128 patents. This sharply contrasts with the situation in *Flexsys*, where all four of the patents were either asserted in an ITC case or related to the patents in the ITC case. This Court will thus receive no benefit or simplification of issues regarding claim construction and Samsung's infringement on at least the '620, '870, and

'039 patents based on an ITC decision involving the entirely unrelated '344 and '128 patents.

Even though the ubiquitous terms "semiconductor device" and "substrate" appear in many of the patents, numerous claim terms essential to an infringement decision on the '620, '870, and '039 patents are not present in the '344 and '128 patents. *See Furminator, Inc. v. Ontel Prods. Corp.*, 2006 U.S. Dist. LEXIS 67812, at *6 (E.D. Mo. 2006) (denying motion to stay where different claim language was at issue in two pending infringement cases). Thus, contrary to Samsung's contentions, the ITC determinations on the '344 and '128 patents will not simplify, focus or resolve the issues facing this Court on the '620, '870, and '039 patents.

And although the '092 patent is related to the '128 patent, the same analysis applies, as the present action and the ITC proceeding do not concern the same issues. In *Micron*, the court refused to stay the assertion of a patent having the same U.S. classification as a patent subject to the statutory stay because the patent did not involve the same issues. *See* 1999 U.S. Dist. LEXIS 4792 at *8. The *Micron* court held that patents that merely involve the same general area of technology do not have the same issues. *Id.* at *7. Similarly, the fact that the '092 patent is related to or involves a technology similar to the '128 patent is irrelevant. Because the issues surrounding the '092 patent are not the same issues as the '128 patent in the ITC proceeding, the court should not stay the infringement claim involving the '092 patent.

For purposes of determining infringement, the overlap between the '092 patent and the '128 patent is essentially insignificant in comparison with the lack of overlap among the asserted patents asserted in the 07-53-JJF action and the present case. The fact

that some claim terms in the '092 patent and '128 patent are similar has no bearing on all of the numerous claim terms of the '092, '620, '870, and '039 patents that are simply <u>not present</u> in the '128 patent. (*Compare* Seaman Decl. Exh. 6 at col. 17, l. 45 to col. 20, l. 30 *with* Seaman Decl. Exh. 1 at col. 76, l. 63 to col. 80, l. 38, *and* Seaman Decl. Exh. 2 at col. 17, l. 34 to col. 20, l. 9, *and* Seaman Decl. Exh. 3 at col. 24, lns. 31-60, *and* Seaman Decl. Exh. 4 at col. 24, l. 30 to col. 32, l. 8.) These different terms may have to be independently construed by this Court and would involve different infringement determinations even if similar products are accused of infringement.

Furthermore, if the cases did share some issues, a stay will not simplify such issues in the present action because a final determination in the ITC proceeding has no effect on the issues in the present action. *Texas Instruments v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996) ("[D]ecisions of the ITC involving patent issues have no preclusive effect in other forums."). Contrary to Samsung's position that the ITC proceeding may narrow the issues in dispute, the Court will have to independently decide any overlapping issues, if any, decided by the ITC. *Id.* ("The district court can attribute whatever persuasive value to the prior ITC decision that it considers justified.").

### 4. The Stage of the Present Suit Provides No Support for a Stay

"Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference -- that a suit in the early stages should weigh heavily in favor of a stay -- is not true." *Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, 2006 U.S. Dist. LEXIS 64698, at *11 (N.D. Tex. Sept. 11, 2006).

The same is true here.  The early nature of the present action has no bearing on the propriety of a stay.

Contrary to Samsung's suggestion, the present case is unlike *Alloc* since a stay would not prevent the parties from incurring "substantial litigation-related expenses." Regardless of the present action, the parties will likely incur significant costs from the pending ITC case and the ITC matter (Inv. No. 337-TA-2544) initiated by Samsung.  At best, this factor is neutral and should be disregarded.

Finally, this Court has ordered a trial no later than September 2008, and the parties have agreed to a schedule designed to provide for completion of discovery (which has already begun), in accordance with this order.  (D.I. 15 at 1; D.I. 21 at 1-5.)  Thus, in view of this Court's holding of *Zoetics*, in view of the setting of a trial date, a stay in this case would not be appropriate.

## IV.    CONCLUSION

A consolidation of this action with the stayed 07-54-JJF action would needlessly complicate the resulting suit, and unduly prejudice Renesas pursuit of redress for Samsung's infringement of the patents asserted in this action.  Similarly, a stay of this action would not result in any simplification and would simply delay the resolution of issues already set for trial in September of next year.  Accordingly, for the foregoing reasons, the Court should deny Samsung's Motion to Consolidate and Stay.[2]

---

[2] Should the court find a relationship between the '092 patent asserted in this case and the '128 patent asserted in the 07-53-JJF case substantial enough to merit consideration of a stay, Renesas would respectfully request that the Court consider merely staying Renesas's claims relating to the '092 patent (i.e. Count I) and otherwise deny Samsung's Motion to Consolidate and Stay.  The existence of Count I should in no way result in a stay of Renesas's other infringement claims present in this case.

_/s/ John M. Seaman_
Andre G. Bouchard (#2504)
John M. Seaman (#3868)
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
abouchard@bmf-law.com
jseaman@bmf-law.com

Attorneys for Plaintiff
Renesas Technology Corp.


OF COUNSEL:

Christopher E. Chalsen
Michael M. Murray
James R. Klaiber
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
Fax: (212) 530-5219


DATED:  June 13, 2007

**EXHIBIT A**

Westlaw.

Slip Copy                                                                                    Page 1
Slip Copy, 2006 WL 3759758 (D.Minn.)
**(Cite as: Slip Copy)**

3M Co v. Moldex-Metric, Inc.
D.Minn.,2006.
Only the Westlaw citation is currently available.
    United States District Court,D. Minnesota.
    3M COMPANY and 3M Innovative Properties
            Company, Plaintiffs
                    v.
    MOLDEX-METRIC, INC., Defendant.
        **Civil No. 06-4044 (MJD/AJB).**

            Dec. 21, 2006.

Alan G. Carlson, Deakin T. Lauer, J. Derek
Vandenburgh, Matthew J. Goggin, Russell J. Rigby,
Carlson Caspers Vandenburgh & Lindquist,
Minneapolis, MN, Hildy Bowbeer, 3M Company,
Karl G. Hanson, 3M Innovative Properties Company,
St. Paul, MN, for Plaintiffs.
Allen A. Arntsen, Stephan J. Nickels, Foley &
Lardner, LLP, Madison, WI, David A. Prange,
Oppenheimer Wolff & Donnelly LLP, Minneapolis,
MN, William J. Robinson, Foley & Lardner, Los
Angeles, CA, for Defendant.

    **Order on Defendant's Motion to Consolidate**
MICHAEL J. DAVIS, United States District Court
Judge.
**\*1** Based on this Court's review of the record, the
Court **AFFIRMS** Magistrate Judge Boylan's Report
and Recommendation dated December 1, 2006. **IT IS
HEREBY ORDERED** that:

1.   Magistrate   Judge   Boylan's   Report   and
Recommendation   dated   December   1,   2006   is
**ADOPTED; and**

2. Defendant's Motion to Consolidate [Docket No. 11
] **is GRANTED.**
ARTHUR J. BOYLAN, United States Magistrate
Judge.

    **Report and Recommendation on Defendant's
            Motion to Consolidate**

This  matter  is  before  the  court,  United  States
Magistrate Judge Arthur J. Boylan, on Defendant's
Motion to Consolidate Civil Action Case Nos. 03-
5292 and 06-4044.

Based upon the file and documents contained therein,
along with the memoranda and arguments of counsel,
this Court **recommends** that Defendant's Motion to
Consolidate [Docket No. 11] be **granted** as follows:

(a) The action assigned Civil Action No. 06-4044 be
consolidated with the action assigned Civil Action
No. 03-5292.

            **Memorandum**

            **I. Background**

Moldex requests that this Court consolidate Civil
Action Case Nos. 03-5292 and 06-4044. Case No.
03-5292 ("the 2003 Action") is a patent infringement
case in which 3M claims Moldex infringed on three
of 3M's patents relating to exhalation valves for
respirator masks. 3M claims that Moldex infringed
U.S. Patent No. RE 37,974 ("the Bowers 974
patent"), U.S. Patent No. 6,843,248 ("the Japuntich
248 patent"), and U.S. Patent No. 6,854,463 ("the
Japuntich 463 patent"). These three patents "relate to
the structure of an exhaust valve involving a curved
valve seat and a flexible flap that bears against the
seat and keeps the valve closed until the user
exhales." [Docket No. 11]

Case No. 06-4044 ("the 2006 Action) is a recently
filed patent infringement case in which 3M claims
Moldex infringed on U.S. Patent No. 7,117,868 ("the
Japuntich' 868 patent") and U.S. Patent No.
6,959,709 ("the Curran 709 patent"). The Japuntich
868 patent was issued on October 10, 2006 and is a
continuation of the application that led to the
Japuntich 463 patent in the 2003 Action. The Curran
709 patent was issued on November 1, 2005 and
relates to the method of attaching the exhaust valve to
the mask.

3M's in-house counsel, Karl Hanson, prosecuted the
Japuntich 248 patent, the Japuntich 463 patent, and
the Japuntich 868 patent. Karl Hanson is also listed
as co-prosecutor on the Curran 709 patent.

3M alleges that Moldex's masks that have Ventex ™
exhalation valves infringe on all of the patents
asserted in the 2003 Action and the 2006 Action. 3M
seeks damages and injunctive relief against the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 2
Slip Copy, 2006 WL 3759758 (D.Minn.)
(Cite as: Slip Copy)

Ventex ™ mask. In both actions, Moldex has answered and asserted the defenses of non-infringement, invalidity, and counterclaimed for declaratory judgments of non-infringement and invalidity. Moldex also asserted the defense of inequitable conduct in the 2006 Action and has a motion pending to amend its answer and counterclaims in the 2003 Action to add the inequitable conduct defense.

*2 Moldex asserts that all of the discovery in 2003 Action will be applicable to the 2006 Action and very little additional discovery will be needed in the 2006 Action. Moldex also asserts that the witnesses from 2003 Action can be used in the 2006 Action. Moldex argues that the only additional witnesses should be (1) the inventors from the Curran 709 patent; (2) the second attorney involved in the prosecution of the Curran 709 patent; and (3) a 3M witness on the subject of 3M's practice of Curran 709 patent invention. Moldex also asserts that it will use the same experts for both actions.

3M argues that consolidation of the 2003 Action and the 2006 Action is inappropriate because the 2006 Action has barely begun whereas the 2003 Action has been ongoing for several years. 3M also asserts that the Curran 709 patent involves a completely different subject matter than the three patents at issue in the 2003 Action. 3M argues that the patents in the 2003 Action involve "an exhalation valve having a cantilevered flap design that is configured so that the flap is pressed against the seal surface on the valve in all orientations of the mask. In contrast, the Curran 709 patent is directed to a method of attaching a valve to a respirator mask." [Docket No. 17].

### Legal Standard

A court may consolidate cases that involve "a common question of law or fact" in order "to avoid unnecessary costs or delay." Fed.R.Civ.P. 42(a). "In deciding whether consolidation is appropriate, the court must balance the savings of time and effort resulting from consolidation against any inconvenience, delay or expense that it would cause." Powell v. Nat'l Football League, 764 F.Supp. 1351, 1359 (D.Minn.1991).

### II. Discussion

The Court finds that the savings of time and effort

resulting from consolidation of these actions outweighs any inconvenience, delay, or expense that it might cause to 3M. First, both cases involve a common question of law as it relates to 3M's patent infringement claims against Moldex. Both cases also have a common question of fact in terms of the patents asserted in both cases. While it is true that the 2003 Action and the 2006 Action are at very different stages, much of the same discovery from 2003 Action can be used in the 2006 Action.

The damage analysis will be the same in both cases because each case involves Moldex's accused Ventex ™ product and 3M's competing Cool Flow ™ product. Moldex is also asserting the same defenses in both cases which implicate common questions of law and facts. The Court finds that there would be overlap in the claim construction analysis as it relates to the Japuntich 868 patent in the 2006 Action and the Japuntich 248 and 463 patents in the 2003 Action. Moldex also plans to use the same expert witnesses in both cases and it is likely 3M would too.

The consolidation of these cases would also not cause undue delay in the resolution of these matters because the parties can meet with the Magistrate Judge for a revised scheduling order so that the schedule is set up to lead to a quicker resolution of these actions than if the they remained separate. Finally, the consolidation of these cases would eliminate the risk of inconsistent results.

### III. Conclusion and Recommendation

*3 Accordingly, this Court recommends that Defendant's Motion to Consolidate [Docket No. 11] be granted.

D.Minn.,2006.
3M Co v. Moldex-Metric, Inc.
Slip Copy, 2006 WL 3759758 (D.Minn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                             Page 1
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Alloc, Inc. v. Unilin Decor N.V.
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
ALLOC, INC., a Delaware corporation, et al.,
Plaintiffs,
v.
UNILIN DECOR N.V., a Belgian company, et al.,
Defendants.
No. Civ.A. 03-253-GMS.

July 11, 2003.

*MEMORANDUM AND ORDER*
SLEET, J.

## I. INTRODUCTION

**\*1** On March 5, 2003, Alloc, Inc. ("Alloc"), Berry Finance N.V. ("Berry"), and Valinge Aluminum AB, ("Valinge") (collectively "the plaintiffs") filed a complaint against Unilin Decor, N.V. ("Unilin") and Quick-Step Flooring, Inc. ("Quick-Step") (collectively "the defendants") alleging infringement of U.S. Patent No. 6,516,579 ("the '579 patent"). The '579 patent is the latest in a series of continuation patents that include U.S. Patent Nos. 5,706,621 ("the '621 patent"), 5,860,267 ("the '267 patent"), 6,023,907 ("the '907 patent"), and 6,182,410 ("the '410 patent").

The '621 patent is currently undergoing reexamination in the United States Patent and Trademark Office ("PTO"). Additionally, the Federal Circuit is considering infringement issues with regard to the '267, '907, and '410 patents after the International Trade Commission ("ITC") rendered a non-infringement decision in favor of Unilin and against the plaintiffs.

Presently before the court is the defendant's motion to stay litigation of the '579 patent pending the completion of both the '621 reexamination proceedings and the Federal Circuit's decision on the '267, '907, and '410 patents. After consideration of each of the factors involved, and for the reasons detailed below, the court will grant the motion to stay.

## II. BACKGROUND

The parties involved in the present action have attempted to resolve their patent infringement issues in many different forums, both in the United States and in Europe. Specifically, in July 2000, Pergo Inc. ("Pergo"), Unilin's licensee, brought a declaratory action in the District of Columbia with regard to the '267, '907, and '621 patents in response to the plaintiffs' threats of infringement litigation. Pergo additionally filed a request for reexamination of the '621 patent in the PTO. This reexamination is currently ongoing. The plaintiffs subsequently filed a complaint in the Eastern District of Wisconsin asserting that Pergo and Unilin infringed the '267 and '907 patents. In response, Unilin filed its own declaratory judgment action in the District of Columbia, alleging that its product did not infringe the '267, '907, and '621 patents.

In December 2000, the plaintiffs initiated a proceeding in the ITC asserting that Unilin infringed the '267, '907, and '410 patents. Upon the filing of the ITC action, all of the district court actions between the two parties concerning the alleged infringement of the '267, '907, and '410 patents were stayed pursuant to 28 U.S.C. § 1659. In November 2001, an ITC Administrative Law Judge ("ALJ") issued a decision finding that Unilin did not infringe the '267, '907, or '410 patents. The ITC affirmed the ALJ's decision in April 2002. The plaintiffs then appealed to the Federal Circuit, which heard oral argument on that case in March 2003. No decision has yet issued.

In the present case, the '579 patent is the only patent in dispute. However, as the court noted above, it is the latest of the continuation patents that stem from the original '621 patent. The '579 patent has never been reviewed by the PTO, the ITC, or any other court.

## III. DISCUSSION

**\*2** The decision to stay a case is firmly within the discretion of the court. *See Cost Bros., Inc. v. Travelers Indem. Co.,* 760 F.2d 58, 60 (3d Cir.1985). This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

1426-27 (Fed.Cir.1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg.*, 3 U.S.P.Q .2d 1889, 1890 (N.D.Ill.1987) (recognizing that, "in passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp.*, 705 F .2d 1340, 1342 (Fed.Cir.1983) (citing legislative history of reexamination statute).

In determining whether a stay is appropriate, courts are directed to consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co.*, 766 F.Supp. 212, 217 (D.Del.1991) (stating a similar test).

In opposition to the defendants' motion to stay, the plaintiffs first argue that, since the '579 patent itself is not at issue in the reexamination proceedings, or in the Federal Circuit appeal, there is no need to stay the case before this court. *See* D.I. 21 at 7. The court must disagree because the plaintiffs cannot credibly argue that the patents are not alike in subject matter, as well as in many of their claims. This is so because, in general, "a continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application." *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555 (Fed.Cir.1994). Thus, a continuation application "claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed." *Id.* Indeed, the plaintiffs themselves admit that the patents in question do have some terms in common. *See* D.I. 21 at 10. Therefore, even though the '579 patent does not contain precisely the same claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a stay is appropriate.

Additionally, with regard to the issue of efficiency, it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to

claims, which, if clearly defined, would streamline discovery and subsequent litigation. To this end, the reexamination of the '621 patent will greatly serve the purpose of defining the issues in this case. For example, the court will gain the benefit of the PTO's particular expertise in evaluating the prior art. *See Pegasus Development Corp. v. DirecTV, Inc.*, 2003 WL 21105073, *2 (D.Del. May 14, 2003)* (citations omitted). Likewise, the court will also benefit from the reexamination process in that (1) many discovery issues relating to prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; and (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court. *Id.* (citations omitted). Such a refinement of the issues will benefit both parties by reducing litigation costs. *See id.* This approach will also best conserve the court's scarce resources. *See id.* Similar benefits will likewise flow from the Federal Circuit's analysis of the '267, '907, and '410 patents.

**\*3** The plaintiffs alternatively contend that the motion is premature because the two proceedings that have a potential impact on this case may be decided well before this case reaches the claim interpretation stage. *See* D.I. 21 at 5. However, if the decisions of the PTO and Federal Circuit are imminent, as the plaintiffs suggest, a stay at this time would not unduly burden their case as the stay would then be of short duration.

Finally, the court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date. Therefore, the stay will be entered before any party incurs substantial litigation-related expenses.

## IV. CONCLUSION

In light of the above considerations, the court concludes that a stay at this point in the case would not unduly prejudice the plaintiffs or create for them a clear tactical disadvantage. Indeed, a stay will allow the issues before the court to be further simplified and defined to the benefit of the parties, as well as the court.

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. The Defendants' Motion to Stay Pending the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Reexamination by the U.S. Patent and Trademark Office and Ruling by the United States Court of Appeals for the Federal Circuit (D.I.15) is GRANTED.
2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '621 patent and any decision that results from the Federal Circuit's consideration of the '267, '907, and '410 patents within thirty (30) days of the date of each decision.
3. The Plaintiffs' Motion to Strike Portions of the Answer and Complaint (D.I.11) is DISMISSED, without prejudice, and with leave to re-file should it become necessary following the stay.

D.Del.,2003.
Alloc, Inc. v. Unilin Decor N.V.
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Not Reported in F.Supp.2d                                                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 1126750 (N.D.Ohio)
**(Cite as: Not Reported in F.Supp.2d)**

Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.
N.D.Ohio,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Ohio, Eastern
Division.
FLEXSYS AMERICAS, LP Plaintiff,
v.
KUMHO TIRE, U.S.A., INC., et al., Defendants.
No. 5:05CV156.

April 29, 2005.

Amanda M. Leffler, John C. Fairweather, Lisa S.
Delgrosso, David C. Minc, Akron, OH, Carolyn E.
Miller, Neil A. Benchell, Eric C. Cohen, Chicago, IL,
for Plaintiff.
Alisa L. Wright, Ronald S. Kopp, Philip R. Wiese,
Akron, OH, Darin J. Glasser, Newport Beach, CA,
Diane K. Wong, John C. Kappos, Irvine, CA, Mark A.
Samuels, Ryan K. Yagura, Vision L. Winter, Los
Angeles, CA, Robert B. Casarona, Deborah A.
Coleman, Cleveland, OH, for Defendants.

*Memorandum of Opinion and Order*
GAUGHAN, J.

*INTRODUCTION*

**\*1** This matter is before the Court upon Kumho Tire
U.S.A., Inc., Kumho Tire Co., Inc. and Korea Kumho
Petrochemical Co., Ltd.'s Motion to Stay (Doc. 18).
Sovereign Chemical Company filed notice of Joinder
in Kumho Defendants' Motion to Stay. Also before the
Court is Sinorgchem's Motion to Stay (Doc. 20). This
is an action for patent infringement. For the reasons
that follow, the motions are GRANTED.

*FACTS*

Plaintiff, Flexsys Americas LP, filed this patent
infringement action against defendants, Kumho Tire,
U.S.A., Inc. (hereafter "Kumho USA"), Kumho Tire
Co., Inc. (hereafter "Kumho Korea"), Korea Kumho
Petrochemical Co., Ltd. (hereafter "KKPC"),
Sovereign Chemical Company (hereafter
"Sovereign") and Sinorgchem Co. (hereafter
"Sinorgchem").

According to the complaint, plaintiff is the beneficial
owner of U.S. Patent No. 5,117,063 ('063 Patent), U.S.
Patent No. 5,608,111 ('111 Patent), U.S. Patent No.
5,453,541 ('541 Patent) and 6,140,538 ('538 Patent).
These patents cover certain processes for making the
chemical compound 4-ADPA and its alkylated
derivatives, including 6PPD. (Compl.¶ 1). These
compounds are contained in nearly every tire sold in
the United States. (Comp.¶ 2).

Plaintiff alleges that each defendant infringes its
patents, albeit in different contexts. According to
plaintiff, Sinorgchem actually manufactures 4-ADPA
and 6PPD by utilizing the processes covered by
plaintiff's patents. (Compl.¶ 9). Plaintiff further
alleges that, in concert with Sinorgchem, defendant
KKPC purchases 4-ADPA from Sinorgchem and
alkylates the compound into 6PPD. (Compl.¶ 23).
Kumho Korea and Kumho USA do not manufacture
either compound but, instead, import tires into the
United States that contain 6PPD. (Compl.¶ ¶ 32, 39).
Sovereign Chemical is alleged to have infringed
plaintiff's patents by importing 6PPD made by a
process covered by one or more of the patents at issue.

Shortly after plaintiff filed this lawsuit, it filed a
complaint with the United States International Trade
Commission (hereafter "ITC") against, among others,
Sinorgchem, KKPC and Sovereign Chemical.
Plaintiff, however, did not name Kumho USA or
Kumho Korea as defendants in the ITC action. The
ITC complaint asserts patent infringement claims with
respect to three of the four patents at issue in this
lawsuit. The only patent not subject to the ITC action
is the '541 patent. On March 23, 2005, the ITC
instituted a formal investigation into plaintiff's
allegations. All defendants now seek a stay of this
action pending the conclusion of the ITC proceedings.
Plaintiff opposes defendants' motions.

*ANALYSIS*

As an initial matter, Sinorgchem, Sovereign Chemical
and KKPC argue that they are entitled to a mandatory
stay pursuant to 28 U.S.C. § 1659(a) with respect to
the '063 Patent, the '111 Patent and the '538 Patent,
which are the three patents at issue in the ITC
investigation. Section 1659(a) provides, in relevant
part,
In a civil action involving parties that are also parties

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1126750 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

Page 2

to a proceeding before the United States International Trade Commission ... at the request of a party that is also a respondent in the proceeding before the Commission, the district court *shall* stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission....

**\*2** 28 U.S.C. § 1659(a) (emphasis added).

Plaintiff does not dispute that these defendants are entitled to a stay. Based on the mandatory nature of the stay provision, the Court hereby stays this action as to Sinorgchem, Sovereign Chemical and KKPC with regard to the '063 Patent, the '111 Patent and the '538 Patent.

Sinorgchem, Sovereign Chemical and KKPC also ask this Court to invoke its discretionary power to stay plaintiff's claim of infringement vis à vis the '541 Patent. According to these defendants, adjudication of this patent will involve the same facts and issues facing the ITC with respect to two of the three patents before it. According to defendants, the '541 Patent is a member of the same patent family as the '063 and '111 patents. Defendants argue that nearly all of the important claim terms found in the '541 Patent will necessarily be construed by the ITC because those terms also appear in either the '063 Patent of the '111 Patent. As a result, defendants claim that resolution of plaintiff's claims with respect to the '541 Patent will involve the same claim construction, validity, infringement and inventorship issues. In addition, the witnesses and discovery necessary to analyze this patent will overlap extensively with the discovery that will be conducted before the ITC.

According to plaintiff, a stay of this case is not warranted with respect to the '541 Patent. Plaintiff points out that it does not intend to duplicate any discovery that will be conducted before the ITC and further indicates that the discovery taken in the ITC action will be fully available for use in this case. In addition, plaintiff argues that this Court's resources will not be wasted because the Court will not be required to make any substantive rulings until after the ITC's decision is issued. Moreover, any claims construction or other rulings made by the ITC are not res judicata and, as such, this Court will be required to engage in its own analysis on these issues. According to plaintiff, by permitting discovery into the '541 Patent to proceed simultaneously with the ITC action, this case can be resolved shortly after the ITC concludes its investigation. As such, this case will be

concluded within the 24-month period set for complex cases. Plaintiff further points out that the scope of the two proceedings is different in that the ITC cannot award damages or issue an injunction to the same extent as an Article III court.

Upon review of the parties arguments, as well as the relevant law, the Court finds defendants' argument to be well taken. It is well settled that this Court possesses the power to grant a discretionary stay if the circumstances warrant. *Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "... [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254. "A district court has discretion to determine whether a stay is necessary to avoid piecemeal, duplicative litigation and potentially conflicting results." *International Brotherhood of Electrical Workers, Local Unio No.2020 v. AT & T Network Systs.,* unreported, 879 F.2d 864 (6th Cir. July 17, 1989). "[T]he burden is on the party seeking the stay to show ... [a] pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. United States Dist. Ct., Southern Dist. of Ohio,* 565 F.2d 393, 396 (6th Cir.1977).

**\*3** Although no court in the Sixth Circuit has addressed the precise issues presented by defendants' motion, the Court finds *Alloc, Inc. v. Unilin Decor N.V.,* 2003 WL 21640372 (D.Del. July 11, 2003) instructive. In *Alloc,* plaintiff filed a patent infringement action with respect to one patent, which was the latest in a series of continuation patents. The earlier patents were the subject of an ITC investigation. Plaintiff argued that a stay was inappropriate because the specific patent at issue in the lawsuit was not before the ITC. The court rejected plaintiff's argument, noting that, by nature, continuation patents overlap considerably with each other. Specifically, the court noted,

... [P]laintiffs cannot credibly argue that the patents are not alike in subject matter, as well as in many of their claims. This is so because, in general, 'a continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application.' Therefore, even though the [patent at issue in the lawsuit] does not contain precisely the claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a stay is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 3
Not Reported in F.Supp.2d, 2005 WL 1126750 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

appropriate.

*Id.* at *2 (citations omitted).

The court further noted that it would benefit greatly from the narrowing of complex issues related to the claims. In addition, the court relied on the fact that the parties had not yet incurred substantial litigation expenses.[FN1]

> FN1. Plaintiff attempts to distinguish *Alloc* on the basis that one of the patents at issue was subject to a reexamination proceeding before the Patent Office and the ITC ruling was pending before the Federal Circuit Court of Appeals. In addition, unlike the instant action, the lawsuit in *Alloc* was filed after the ITC proceeding was instituted. The Court does not believe that these minor differences affect the persuasiveness of *Alloc*. Nor is this Court compelled to follow *Mircon Tech., Inc. v. Mosel Vitelic Corp.,* 1999 WL 458168 (D.Idaho March 31, 1999), the case primarily relied on by plaintiff.

Like the Court in *Alloc,* this Court finds that Sinorgchem, Sovereign Chemical and KKPC are entitled to a stay of the proceedings with regard to the '541 Patent. The '541 Patent is part of a series of continuation patents, which includes both the '063 Patent and the '111 Patent. As defendants point out, many of the claims contained in the '541 Patent that will require construction in this case are present in either the '063 or '011 patent. As part of its investigation, the ITC will make rulings concerning claims construction, invalidity and relevant prior art. This Court recognizes that it is not bound by the rulings made by the ITC. As in *Alloc,* however, the Court finds that it would benefit tremendously from a narrowing of the complex issues in this case. It is more than likely that after the ITC ruling, the parties in this case will have fewer issues for this Court to resolve.

Moreover, the Court finds that plaintiff will not be prejudiced by a stay of this case. It is entirely unclear to this Court why plaintiff would opt to pursue only two of the three continuation patents before the ITC, other than in an attempt to avoid the mandatory stay requirements of 28 U.S.C. § 1659(a). Plaintiff indicates in its brief in opposition that it will be harmed by a stay of this action because the damages portion of the trial will be delayed while defendants continue to infringe the patents and because "delay always results in increased costs." The Court is not

convinced of the gravity of plaintiff's alleged prejudice. On the other hand, the Court finds that requiring defendants to litigate both this case and the ITC action at the same time will result in prejudice. As set forth above, the majority of this case against these defendants is subject to a statutory stay. In the event this Court were to allow the case to proceed only with respect to the '541 Patent, this case would essentially be relitigated after the lifting of the mandatory stay. Much of the discovery related to this patent will overlap with that required to litigate the other patents at issue. Thus, two rounds of discovery would ensue absent a stay.[FN2] Although plaintiff indicates that it will not seek additional discovery, the same cannot be said of all of the parties in this case. Certainly, as set forth more fully below, Kumho USA and Kumho Korea will seek discovery as to the patents at issue before the ITC. Because plaintiff did not name them as defendants in the ITC proceeding, they will be unable to participate in discovery until after this Court lifts the automatic stay. In addition to compounding the written discovery,[FN3] this would result in redeposing many witnesses[FN3] and requiring the parties to appear for at least twice as many hearings and conferences. Given that two of these defendants are located in Asia, the Court finds that requiring this case to proceed only with respect to the '541 Patent would create an undue burden on defendants.

> FN2. Even accepting as true plaintiff's statement that no discovery will be duplicated, the Court finds that imposition of a discretionary stay will not cause plaintiff undue hardship. The '541 Patent is a member of the same patent family as the '063 and the '111 patents and the Court cannot imagine that a great deal of additional discovery will be necessary to analyze the '541 Patent after the ITC ruling is issued. Thus, if plaintiff is correct, and no party seeks discovery in regards to the patents at issue before the ITC, only a minimal delay will occur in this action.

> FN3. For example, in a continuation patent there is at least one inventor in common with the prior application. Because of the statutory stay, this individual could not be questioned with regard to either the '063 Patent or the '111 Patent until after the stay is lifted. If this Court allowed the case to proceed only as to the '541 Patent, this individual would be required to appear at least twice for depositions. The Court presumes other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1126750 (N.D.Ohio)
(Cite as: Not Reported in F.Supp.2d)

Page 4

witnesses would face a similar fate.

*4 In addition, the Court finds that a temporary stay will result in a tremendous savings of judicial time and resources. Absent a stay, the Court will hold status conferences and hearings and address discovery disputes only to be faced with many of these same issues after the stay is lifted. In all, the Court finds that the balance of interests weighs in favor of granting a stay with regard to the '541 Patent.

For these same reasons, the Court finds that a stay with regard to Kumho USA and Kumho Korea is also warranted. Although these defendants are not parties to the ITC action, the Court finds that allowing this case to proceed against only these defendants makes little sense. As these defendants point out, they are not primary infringers. Rather, plaintiff alleges that Kumho USA and Kumho Korea import tires containing products that were manufactured by other defendants who used an infringing process. Having concluded that a stay of this matter is appropriate as to the primary infringer(s), the Court finds that requiring Kumho USA and Kumho Korea to defend this action absent the primary infringer(s) would result in unfair prejudice to defendants. Once the stay is lifted, all of the issues will be relitigated. Perhaps even more important, it would be impossible for this Court to resolve the patent infringement claims filed against these defendants absent the primary infringer(s) because the patents at issue are process patents. Kumho USA and Kumho Korea are not alleged to infringe the patent by employing the covered processes themselves. Rather, they import tires allegedly containing materials other defendants manufacture in violation of the patents. As such, in order to determine whether Kumho USA and Kumho Korea are liable in this case, it is necessary to discover the process employed by the primary infringer(s) in creating the 6PPD contained in the tires they import. It will be impossible, however, for these defendants to obtain the discovery necessary to defend themselves against the majority of the claims asserted by plaintiff until after the mandatory stay is lifted.[FN4] For this reason, and those stated above, the Court finds that a stay is warranted as to Kumho USA and Kumho Korea.

> FN4. The Court rejects plaintiff's suggestion that these parties would not require additional discovery because they have the same attorneys as KKPC. For obvious reasons, this Court could not preclude Kumho USA and Kumho Korea from

seeking additional discovery upon the lifting of the mandatory stay.

### CONCLUSION

For the foregoing reasons, Kumho Tire U.S.A., Inc., Kumho Tire Co., Inc. and Korea Kumho Petrochemical Co., Ltd.'s Motion to Stay are GRANTED. In addition, Sinorgchem's Motion to Stay is GRANTED. This case is hereby perpetually stayed. Upon the conclusion of the ITC proceeding, any party may move to reopen this case.

IT IS SO ORDERED.

N.D.Ohio,2005.
Flexsys Americas, LP v. Kumho Tire, U.S.A., Inc.
Not Reported in F.Supp.2d, 2005 WL 1126750 (N.D.Ohio)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

**FURMINATOR, INC., Plaintiff, v. ONTEL PRODUCTS CORP., Defendant.**

**No. 4:06-CV-1294 CAS**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION**

*2006 U.S. Dist. LEXIS 93600*

**December 28, 2006, Decided**
**December 28, 2006, Filed**

**PRIOR HISTORY:** *Furminator, Inc. v. Ontel Prods. Corp., 2006 U.S. Dist. LEXIS 79754 (E.D. Mo., Nov. 1, 2006)*

**COUNSEL:** [*1] For Furminator, Inc., Plaintiff: Alan H. Norman, LEAD ATTORNEY, Matthew A. Braunel, THOMPSON COBURN, St. Louis, MO; David B. Jinkins, Steven E. Garlock, THOMPSON COBURN LLP, St. Louis, MO.

For Ontel Products Corp., Defendant: Jeffrey L. Eichen, Mary Ellen R. Himes, Michelle Meira Marcus, Rebecca Goldsmith Lombard, Roger A. Colaizzi, LEAD ATTORNEYS, VENABLE LLP, Washington, DC; Matthew L. Cutler, HARNESS AND DICKEY, St. Louis, MO.

For Kim Laube & Co., Inc., Movant: Keith J. Grady, LEAD ATTORNEY, Lewis, Rice & Fingersh, L.C., St. Louis, MO.

For Ontel Products Corp., Counter Claimant: Jeffrey L. Eichen, Mary Ellen R. Himes, Michelle Meira Marcus, Rebecca Goldsmith Lombard, Roger A. Colaizzi, LEAD ATTORNEYS, VENABLE LLP, Washington, DC; Matthew L. Cutler, LEAD ATTORNEY, HARNESS AND DICKEY, St. Louis, MO.

For Furminator, Inc., Counter Defendant: Alan H. Norman, Matthew A. Braunel, LEAD ATTORNEYS, THOMPSON COBURN, St. Louis, MO; David B. Jinkins, Steven E. Garlock, LEAD ATTORNEYS, THOMPSON COBURN LLP, St. Louis, MO.

**JUDGES:** CHARLES A. SHAW, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** CHARLES A. SHAW

**OPINION:**

**MEMORANDUM AND ORDER**

This matter is before the Court on movant Kim [*2] Laube & Company, Inc.'s ("Laube") motion to consolidate for pretrial purposes this action and Furminator, Inc. v. Kim Laube & Co., Inc., 4:06-CV-1314 DJS (Laube), and to stay all proceedings in Laube pending resolution of the plaintiff's motion for preliminary injunction filed in this action. Plaintiff FURminator, Inc. ("Furminator") opposes the motion and the matter is now fully briefed. For the following reasons, the Court will deny Laube's motion to consolidate and deny as moot its motion to stay proceedings.

**Motion to Consolidate.**

The instant matter was filed on August 28, 2006. In the complaint, Furminator alleges that defendant Ontel Products Corp.'s ShedEnder pet grooming tool infringes Furminator's *U.S. Patent No. 7,077,076* (the *'076 patent*). Furminator previously filed another action against Ontel, *FURminator, Inc. v. Ontel Products Corp., et al., 429 F. Supp. 2d 1153* ("Furminator I)" which asserts that the ShedEnder grooming tool infringes Furminator's *U.S. Patent No. 6,782,846* (the *'846 patent*). In Furminator I, the Court denied Furminator's motion for preliminary injunction and an interlocutory appeal of that ruling is currently pending [*3] before the United States Court of Appeals for the Federal Circuit. On August 31, 2006, Furminator filed the Laube action, alleging that Laube's iVac pet grooming tool violates the *'846 patent* and the *'076 patent*.

Laube contends that the efficient administration of justice would be furthered by consolidating Laube into this case for pretrial purposes, because the cases involve significant common questions of law and fact related to the invalidity and unenforceability of the *'846* and *'076 patents*. Laube asserts that the patents derive from a common application, because the *'076 patent* is a continuation of the *'846 patent*, and that the claims of the two patents are substantially similar. Laube contends that the

two patents are invalid and unenforceable, and states that to prove these defenses it will rely on much of the same evidence and prior art submitted by the parties in the instant case and in Furminator I. Laube also asserts that discovery in the instant case has not progressed to such a point that consolidating the cases would result in delay or prejudice to any party.

Furminator responds that much of Laube's motion is moot, because the motion for preliminary injunction [*4] in the instant case was withdrawn on November 7, 2006. Furminator further responds that consolidation of the two actions is inappropriate because the cases involve different patents, different parties and different products. Furminator states that it was directed by the Clerk's Office to file the Laube suit as an unrelated matter for those very reasons. Furminator points out that the instant case involves an infringement claim against Ontel's ShedEnder product on the '846 patent, while the Laube case involves an infringement claim against Laube's iVac product on both the '846 and '076 patents. Furminator contends that as a result, consolidation of the suits is inappropriate, is unnecessary to avoid piecemeal litigation, and would not conserve judicial resources. Furminator also states that extensive discovery was completed in this case in preparation for the preliminary injunction hearing in which Laube did not participate, including the deposition of ten witnesses and the exchange of written discovery and the production of documents. Finally, Furminator states that because the parties in Laube must conduct discovery on both the '846 and the '076 patents, consolidation [*5] would slow discovery in the instant case because it concerns only the '076 patent.

Laube replies that the two patents at issue cover the same basic device and method and that the claims are not substantially different. Laube asserts that many patent cases involving different parties and patents are consolidated when, as here, the additional patents are related, citing *Paxonet, Inc. v. Transwitch Corp.*, 303 F. Supp. 2d 1027, 1028-29 (N.D. Cal. 2003). Laube states that the basic test for consolidation under *Rule 42(a)* is whether the actions involve common questions of fact and law and whether consolidation will facilitate the efficient administration of justice. Laube asserts that both prongs of this test are met here, as the cases involve significant common questions of law and fact related to the invalidity and unenforceability of the '846 and '076 patents, and the claims of the two patents are substantially similar. Laube also asserts that this Court's familiarity with the patents and evidence submitted in Furminator I and this case will result in significant conservation of judicial resources and save the parties significant time and effort.

*Federal Rule of Civil Procedure 42(a)* [*6] , which governs consolidation, states:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

*Rule 42(a), Fed. R. Civ. P.*

The Court has broad discretion in ordering the consolidation of matters, but that discretion is not unbounded. *Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994). The Court may consolidate separate actions when those actions involve a common question of law or fact. Id. The Court must examine "the special underlying facts" with "close attention" before ordering consolidation. *In re Repetitive Stress Injury Litigation*, 11 F.3d 368, 373 (2d Cir. 1993) (citation omitted). The purpose of consolidation is to foster convenience and economy in administration. *Enterprise Bank*, 21 F.3d at 235. "The party moving for consolidation bears the burden of showing commonality of factual and legal [*7] issues in different actions." *In Re Repetitive Stress Injury*, 11 F.3d at 373 (citation omitted).

Laube emphasizes the defense issues of patent invalidity and unenforceability in support of its argument that common questions of law and fact exist between the instant case and Laube. The Court, however, believes the key threshold issues in the Furminator cases concern claim construction and infringement. The Court's preliminary claim construction rulings in Furminator I are currently before the Federal Circuit, which will determine whether those rulings were proper. n1 The Federal Circuit's decision will be the law of the case for Furminator I and may also offer some guidance concerning claim construction in the instant case. The Court has previously observed, however, that the instant matter involves a different patent with different claim language than is at issue in Furminator I. Further, the key language of the '846 patent on which the Court relied to distinguish the accused products and methods in Furminator I is not present in the '076 patent. See Mem. and Order of Sept. 21, 2006 (denying Ontel's motion to stay this case pending the [*8] Federal Circuit's decision in Furminator I). The Court also observed that the Federal Circuit may not decide the issue of patent validity on the interlocutory appeal because this Court expressly declined to reach that issue in denying the motion for preliminary injunction in Furminator I.

n1 See Memorandum and Order of March 17, 2006 in *FURminator I, 429 F. Supp. 2d 1153.*

In the Laube case, Furminator claims infringement of both the *'846* and *'076 patents*, but concerning a completely different accused device than is at issue in Furminator I and the instant case. This is a key factual distinction. Laube does not assert that its accused device shares any similarity with the Ontel ShedEnder device. Therefore, the infringement analyses in Furminator I and the instant case will have no bearing on the infringement analysis in Laube. In addition, the Court is concerned that the progress of this case will be delayed because the parties in Laube must conduct discovery on both patents, [*9] while the instant case only concerns the *'076 patent.*

The instant case and Laube do share some common questions of law and fact with respect to claim construction and validity. The Court does not believe, however, that common questions predominate. It is not unusual for there to be numerous cases which share common questions of law or fact but which are not consolidated or assigned to the same judge in this district. This is why the Clerk's Office instructed Furminator that Laube should not be filed as a "related case" to the instant matter or Furminator I. Moreover, Laube has not persuaded the Court that the efficient administration of justice requires that the cases be consolidated. To the extent the Federal Circuit's ruling in Furminator I is relevant to the Laube case, the parties will undoubtedly inform Judge Stohr of that ruling, as well as any rulings in the instant case which may be of interest.

**Conclusion.**

For the foregoing reasons, the Court will deny movant Kim Laube & Company, Inc.'s motion to consolidate this action for pretrial purposes with Furminator, Inc. v. Kim Laube & Co., Inc., 4:06-CV-1314 DJS. Laube's motion to stay all [*10] proceedings in the Laube case pending resolution of the preliminary injunction motion in this case will be denied as moot without prejudice, as Furminator's motion for preliminary injunction was withdrawn. Further, any such motion should properly be directed to Judge Stohr for his ruling.

Accordingly,

**IT IS HEREBY ORDERED** that movant Kim Laube & Company, Inc.'s motion to consolidate for pretrial purposes the instant action and Furminator, Inc. v. Kim Laube & Co., Inc., 4:06-CV-1314 DJS is **DENIED.** [Doc. 41]

**IT IS FURTHER ORDERED** that movant Kim Laube & Company, Inc.'s motion to stay all proceedings in Laube pending resolution of plaintiff's motion for preliminary injunction in this case is **DENIED as moot,** without prejudice. [Doc. 41]

**CHARLES A. SHAW**

**UNITED STATES DISTRICT JUDGE**

Dated this 28th day of December, 2006.

# EXHIBIT E

**MICRON TECHNOLOGY, INC., Plaintiff, v. MOSEL VITELIC CORPORATION and MOSEL VITELIC, INC., Defendants.**

**Case No. CIV 98-0293-S-LMB**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO**

*1999 U.S. Dist. LEXIS 4792*

**March 31, 1999, Decided**
**March 31, 1999, Filed**

**COUNSEL:** [*1] For MICRON TECHNOLOGY INC, plaintiff: Kirk R Helvie, MOFFATT THOMAS BARRETT ROCK & FIELDS, Boise, ID.

For MICRON TECHNOLOGY INC, plaintiff: William A Streff, Jr, Russell E Levine, Barry F Irwin, John F Paschke, Rita Mirman, David K Callahan, Jennifer Anderson Van Kirk, Jeffrey D Mills, KIRKLAND & ELLIS, Chicago, IL.

For MOSEL VITELIC CORPORATION, MOSEL VITELIC, INC., defendants: P Larry Westberg, WESTBERG MCCABE & COLLINS, Boise, ID.

For MOSEL VITELIC CORPORATION, MOSEL VITELIC, INC., defendants: Bryan K Anderson, Maria S Spustek, James E Parsons, Edward V Anderson, Steven M Levitan, Robert B Morrill, Alan H MacPherson, SKJERVEN MORRILL MACPHERSON FRANKLIN & FRIEL, San Jose, CA.

For MOSEL VITELIC CORPORATION, MOSEL VITELIC, INC., counter-claimants: P Larry Westberg, WESTBERG MCCABE & COLLINS, Boise, ID.

For MOSEL VITELIC CORPORATION, MOSEL VITELIC, INC., counter-claimants: Bryan K Anderson, SKJERVEN MORRILL MACPHERSON FRANKLIN & FRIEL, San Jose, CA.

For MICRON TECHNOLOGY INC, counter-defendant: Kirk R Helvie, MOFFATT THOMAS BARRETT ROCK & FIELDS, Boise, ID.

For MICRON TECHNOLOGY INC, counter-defendant: William A Streff, Jr, Russell E Levine, Barry F Irwin, John F Paschke, KIRKLAND & ELLIS, Chicago, IL.

**JUDGES:** LARRY M. BOYLE, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** LARRY M. BOYLE

**OPINION:**

ORDER

Currently pending before the Court are Defendants' Motion to Stay (Docket No. 17), Plaintiff's Motion to Strike under *F.R.Civ.P. 12(f)* or for a More Definite Statement under *F.R.Civ.P. 12(e)* (Docket No. 26), Plaintiff's Motion for Entry of a Protective Order under *Fed.R.Civ.P. 26(c)* (Docket No. 49), Plaintiff's Motion to Compel Responses to Interrogatories Nos. 2 and 3 of Micron's First Set of Interrogatories (Docket No. 54), Defendants' Motion for Protective Order (Docket No. 70) and Defendants' Motion for Entry of a Protective Order (Docket No. 92).

Also currently pending before the Court is Plaintiff's Motion to Strike under *F.R.Civ.P. 12(f)* or for a more Definite Statement under *F.R.Civ.P. 12(e)* (Docket No. 30, filed in Case No. 98-0294-S-MHW).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Order.

**I.**

**BACKGROUND**

Micron Technology, Incorporated, a Delaware corporation with its principal place of business in Boise, Idaho, is engaged in the business of designing, distributing and selling semiconductor devices to providers in the computer [*2] industry. Mosel Vitelic Incorporated is a Taiwanese corporation that manufactures and imports semiconductor devices into the United States, which are then sold by a wholly owned California subsidiary, Mosel Vitelic Corporation. According to Micron, two of the semiconductor devices manufactured and sold by Mosel

infringe upon numerous United States Patents held by Micron. More specifically, Micron maintains that six of the patents issued to it under the patent laws of the United States relating to circuit technology as well as five such patents relating to process technology have been infringed by Mosel.

On July 17, 1998, Plaintiff Micron filed the instant action against Defendants Mosel Vitelic Corporation and Mosel Vitelic Incorporated seeking relief as a result of the alleged infringement of the six circuitry patents. On the same day, Plaintiff Micron initiated an action against the same Defendants seeking relief relating to the alleged infringement of the five process patents which was assigned to Hon. Mikel H. Williams. Thereafter, on July 31, 1998, Defendants filed an action against Plaintiff in the United States District Court for the District of Delaware alleging Micron's infringement [*3] of a valid patent held by Mosel. Finally, on August 21, 1998, Plaintiff instituted its third action against Defendants by filing a Complaint before the United States International Trade Commission. Pursuant to that complaint, Micron alleged that Mosel had infringed upon four process technology patents. The four patents at issue before the ITC are the very same patents at issue in four of the five patent claims filed in the federal action originally assigned to Judge Williams.

On December 30, 1998, Judge Williams entered an order consolidating that case into the instant action. According to Judge Williams, "consolidating the two patent infringement actions [filed in the federal district of Idaho] will appreciably serve the interest of judicial economy... [and that] any prejudice, expense or delay that might occur thereby is substantially outweighed by the benefits to be obtained by trying the cases as one action." Order, p. 11, P C (Docket No. 80). As a result, all of the eleven patent claims, six of which relate to circuitry technology while five relate to process technology, are now before the Court in this instant action.

Because of the eleven counts of patent infringement [*4] in the instant action are the subject of an action before the ITC, Defendants have moved the Court to stay this action pending final resolution of the action before the ITC. Plaintiff maintains that the stay, as requested by Defendants, is inappropriate and should not be entered by the Court. The matter is fully submitted and ripe for disposition.

## II.

## ANALYSIS

### A. Defendants' Motion to Stay (Docket No. 17)

Defendants take the position that, based upon federal law, a stay is mandatory to the extent that patent infringement claims involved in the instant action are also before the ITC. Further, inasmuch as the remaining seven patent infringement claims are substantially legally and factually the same as the patents at issue before the ITC, they should be subject to a court imposed stay as a result of either federal statutory law or this Court's inherent authority to control the resolution of the instant dispute. Plaintiff opposes the relief requested by Defendants as an unwarranted and unjustified attempt to delay its ability to protect its legal rights to valid patents that it holds.

The Congress of the United States has established that:

> In a civil [*5] action involving parties that are also parties to a proceeding before the United States International Trade Commission ..., at the request of a party to the civil action that is also a respondent in the proceeding before the Commission, the district court shall stay, until the determination of the Commission becomes final, proceedings in the civil action with respect to any claim that involves the same issues involved in the proceeding before the Commission, but only if such request is made within ... 30 days after the party is named as a respondent in the proceeding before the commission.

28 U.S.C. § 1659(a) (Supp. 1998). Defendants, the respondents in the action before the ITC, have timely moved to stay the instant action. Accordingly, to the extent that the patent infringement claims asserted in the instant action involve the same issues that are before the ITC, the Court is statutorily required to stay those four claims.

Although four of the five process patent infringement claims in the instant action are based upon the same four patents at issue before the ITC, Plaintiff maintains that a stay with respect to those four process patent claims is inappropriate as to issues [*6] of damages and willfulness because these issues of patent infringement are not before the ITC. While the ITC does not determine the extent of damages for patent infringement or whether the infringement was willful, section 1659 speaks in terms of staying claims, and not specific issues that are implicated in an individual patent infringement claim. If a court were to conclude that a patent infringement claim filed in a district court was not subject to a motion to stay under section 1659 even though it concerned the alleged infringement of the same patent before the ITC because the ITC was unable to determine the extent and willfulness of damages caused by the infringement, the automatic stay provision of section 1659 would be rendered a nullity.

After conducting a careful and thorough study and deliberation on the positions asserted by the respective parties regarding the application of section 1659 to the four process patent infringement claims filed in the instant action, the Court is of the opinion that Defendants' motion to stay those four claims is appropriate. The claims involve the alleged infringement of four process patents held by Plaintiff and as a result issues involved [*7] in the instant action are the same as issues that are before the ITC. Accordingly, Defendants' motion to stay the four process patent infringement claims in the instant action that are also before the ITC is granted until such time as the resolution of the ITC action becomes final.

In addition to asserting that the four process patent infringement claims filed in both the instant action as well as the ITC should be stayed, Defendants take the position that the fifth process patent claim as well as the six circuitry patents should also be stayed. According to Defendants, although the patents for these remaining seven patent infringement claims are not at issue before the ITC, these seven claims are so related to the four patent infringement claims before the ITC that they implicate substantially similar legal and factual issues. Defendants note that Plaintiff alleges that all of the eleven patents at issue were infringed by two Mosel products and that all of the patents relate to the same basic technology field. As a result of these and other similarities, Defendants take the position that all of the claims involved in the instant action should be stayed.

Plaintiff argues that each [*8] of the eleven patents represent separate and distinct property rights, the alleged infringement of which necessarily implicates separate and distinct legal and factual issues. Because of the separate and distinct character of an individual patent and the proof requirements to establish alleged infringement, Plaintiff asserts that the seven remaining individual patent infringement claims in the instant action are separate and distinct from the four patent infringement claims before the ITC. Because Defendants are unable to establish that the seven remaining claims would necessarily involve the same issues before the ITC, a mandatory stay under the provisions of section 1659 is inappropriate.

Defendants have cited legislative history in support of their position that the stay provisions of section 1659 do not require a claim brought in a district court to be based upon the alleged infringement of the same patent at issue before the ITC. Likewise, Plaintiff has cited the Court to legislative history for the proposition that issues before a district court and the ITC are the same only when they involve the resolution of identical legal and factual points. However, after reviewing the [*9] language of the statute, as well as positions taken by the respective parties, the Court concludes that while the remaining seven patent infringement claims filed before this Court raise issues

that are substantially similar to the issues that will be raised in the patent infringement claims before the ITC, those issues are not the same issues as required by the statute. Accordingly, Defendants' motion to stay the remaining seven patent infringement claims based upon section 1659 is denied.

In addition to citing the Court to section 1659 as authority to enter a stay of the instant proceedings, Defendants have requested the Court to stay the instant matter based upon the Court's inherent power.

The Supreme Court of the United States has clearly indicated that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55, 57 S. Ct. 163, 166, 81 L. Ed. 153 [*10] (1936). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 1650, 137 L. Ed. 2d 945 (1997). Thus, the moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255, 57 S. Ct. at 166. The United States Court of Appeals for the Ninth Circuit reviews a stay entered by a trial court based upon an abuse of discretion standard. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). Accordingly, Defendants must establish that the Court should, in the exercise of its discretion, stay the instant action pending resolution of the claims before the ITC because of judicial efficiency, the burden of going forward with the instant action imposed upon Defendants and the lack of prejudice imposed upon Plaintiff due to a delay in the resolution of this action.

Defendants point out that because of the significant overlap of legal and factual issues between the four patent infringement claims that have been stayed pending [*11] the resolution of the ITC action and the seven remaining infringement claims, entering a stay with respect to the seven remaining claims would enhance judicial economy and potentially streamline future proceedings in the instant action once the ITC action is resolved. Defendants assert that staying the instant action until after the ITC action is resolved would provide the Court with the benefit of the findings, conclusions and views of the ITC. Further, Defendants take the position that they are currently prejudiced by defending against multiple actions and that a stay in the instant proceedings would allow them to apply their resources to defending the ITC action. Defendants also assert that Plaintiff would not be prejudiced by a stay of the remaining seven claims in the in-

stant action because it will obtain a timely resolution of the claims before the ITC.

In response, Plaintiff maintains that denying the stay requested by Defendants would actually increase judicial efficiency while a stay would delay the resolution of the seven remaining patent infringement claims. Plaintiff points out that the likely date of completion of the ITC investigation would be September of 1999. If, [*12] as Defendants request, all of the claims in the instant action were stayed until the final outcome of the ITC, the resolution of the instant dispute would likewise be extended. However, Plaintiff argues that if the remaining seven patent infringement claims were allowed to proceed, they would be ready for trial and ultimate resolution much earlier. Plaintiff challenges Defendants' contention that a stay is warranted to streamline multiple litigation fronts. As an illustration of what it argues is an inconsistency in this regard, Plaintiff points out that Defendants have filed an action against Plaintiff in the federal district of Delaware. Inasmuch as Defendants have initiated additional litigation, Plaintiff characterizes any assertion that Defendants are unable to dedicate full and adequate resources to maintain separate lawsuits as unconvincing. Plaintiff argues that a stay would prejudice its interests because each passing month allows Defendants to infringe upon their patented technology and gain unfair advantages in a highly competitive marketplace. Finally, Plaintiff asserts that, although presently financially viable, each passing month poses a continuing risk that Defendants [*13] could falter financially rendering any potential award practically impossible to recover.

Defendants counter Plaintiff's assertions by indicating that a stay would not deprive Plaintiff of full and complete relief in the instant action. Defendants point out that Plaintiff's position that each month of delay causes additional damages is not supported by the record inasmuch as Plaintiff has not sought a preliminary injunction. *See GenDerm Corp. v. Ferndale Labs., Inc., 1994 U.S. Dist. LEXIS 17625, 32 U.S.P.Q.2D (BNA) 1567, 1577 (E.D. Mich. 1994)* (delay in filing for preliminary injunction suggests no irreparable harm); *Abbott Labs. v. Selfcare Inc., 17 F. Supp. 2d 43, 50 (D. Mass. 1998)* ("Delay in seeking preliminary injunctive relief is a factor tending to show the absence of irreparable injury because it is an act 'incompatible with the emphasis on the [patentee's] right to exclude that is the basis for the presumption.'" *GenDerm Corp., 32 U.S.P.Q.2D (BNA) at 1575* (quoting *T.J. Smith and Nephew Ltd. v. Consolidated Medical Equip., Inc., 821 F.2d 646, 648 (Fed.Cir.1987)).

Defendants also assert that a delay would not subject Plaintiff to continued injury because Plaintiff has [*14] admitted that it does not use the fifth process patent that was not included in the ITC action and that the record does not establish that Plaintiff uses the six circuitry

patents it holds. Anderson Decl., p. 2, P 3 (Docket No. 42); *Cf. High Tech Med. Instrumentation v. New Image Indus., Inc., 49 F.3d 1551, 1556 (Fed. Cir. 1995)* (presumption of irreparable harm rebutted because no evidence that party practiced patented invention).

Having thoroughly considered the different positions taken by the respective parties, as well as the existing record, the Court is of the opinion that Defendants' motion to stay the instant action in its entirety should be denied. The Court concludes that Defendants have not established that a stay of the instant proceedings is necessary to prevent undue hardship or injustice. However, the Court is also of the opinion that the seven patent infringement claims filed before this Court should not be resolved separately from the four claims that are subject to the stay under section 1659. Accordingly, discovery relating to the seven remaining claims shall be allowed to proceed.

While Defendants' motion for stay on the remaining seven patent infringement [*15] actions shall not be granted, maintenance of the instant action shall be limited to discovery relating to the seven patent infringement claims not subject to Court stay. Once the Court is provided notice that the ITC action has been resolved, the Court shall schedule the instant dispute for a conference to set a trial date, final discovery shall be allowed to be completed and the parties shall have the opportunity to file dispositive motions, and otherwise proceed toward resolution of this action.

Accordingly, to the extent Defendants move the Court to stay the four patent infringement actions filed in the instant action that are also the subject of the ITC action, the motion is granted. However, the motion to stay the remaining claims now pending before this Court is denied to the extent that discovery shall be allowed to proceed on claims not pending before the ITC.

**B. Plaintiff's Motion to Strike Under *F.R.Civ.P. 12(f)* or for a More Definite Statement Under *F.R.Civ.P. 12(e)* (Docket No. 26)**

Plaintiff moves the Court to strike certain affirmative defenses and counterclaims asserted by Defendants on the ground that Defendants failed to plead the defenses and counter-claims [*16] with sufficient specificity to allow Plaintiff to respond. Subsequent to the filing of the instant motion, Defendants have filed an Amended Answer addressing the concerns raised by Plaintiff pursuant to the instant motion. Accordingly, after reviewing the positions taken by the respective parties subsequent to the filing of the Amended Answer, the instant motion is denied as moot.

**C. Plaintiff's Motion for Entry of a Protective Order Under *Fed. R. Civ. P. 26(c)* (Docket No. 49) and**

**Defendants' Motion for Entry of a Protective Order (Docket No. 92)**

Plaintiff moves the Court for the entry of a protective order which would allow the disclosure of sensitive and confidential information to Defendants' litigation counsel but prevent such disclosures to members of Defendants' in-house litigation team. According to Plaintiff, the instant protective order is necessary in order to prevent unintentional disclosures of highly sensitive and valuable information to its competitors in the marketplace. Defendants take the position that the terms of the protective order proposed by Plaintiff are unduly restrictive and that the Court should enter the protective order that they have proposed. [*17] According to Defendants, certain members of the in-house litigation teams of both respective parties should be provided access to the confidential information held by each side that is central to the resolution of the instant patent dispute. Thus, according to Defendants the Court may allow each party to have the access to sensitive information that is required in the instant action while guarding against unintentional disclosures because access could be limited to certain members of their corporate in-house legal department.

The United States Court of Appeals for the Ninth Circuit "reviews a district court's rulings concerning discovery for an abuse of discretion." *Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1469 (9th Cir. 1992)* (citing *Ah Moo v. A.G. Becker Paribas, Inc., 857 F.2d 615, 619 (9th Cir. 1988)). Federal Rule of Civil Procedure 26(b)(1)* provides that "parties may obtain discovery regarding any manner, not privileged, which is relevant to the subject matter involved in the pending action ... [and that] the information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible [*18] evidence." However, "Rule 26(c) ... explicitly authorizes the district court to protect parties from 'undue burden or expense' in discovery by ordering 'that a trade secret or other confidential research, development, or commercial information not be [revealed] or be [revealed] only in a designated way.'" *960 F.2d at 1469-70* (quoting *Fed. R. Civ. P. 26(c)*, (c)(7)).

In determining when a protective order is appropriate in order to protect confidential information, "the issue entails conflicting interests. On the one hand, parties seeking discovery are entitled to all information 'reasonably calculated to lead to the discovery of admissible evidence,' ... an intentionally broad mandate. On the other hand, responding parties are entitled to protection from 'undue burden' in discovery, including protection from misuse of trade secrets by competitors. These conflicting interests suggest that a balancing test will best resolve protective order disputes such as the one here." *Brown Bag Software, 960 F.2d at 1470* (citations omitted). As a result, in order to resolve the respective motions for protective order, the Court must balance the interest in discovering information against the [*19] interest of protecting sensitive information held by the party moving for a protective order. An important reality to note in determining the appropriateness of a protective order is the realization that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *Fed. Trade Comm'n v. Exxon Corp., 205 U.S. App. D.C. 208, 636 F.2d 1336, 1351 (D.C. Cir. 1980).*

According to Plaintiff in this instant action, the confidential information which is the subject of their motion for protective order is vital and central to its ability to maintain a competitive edge in the marketplace. They point out that such information was acquired only after great effort and expense. Based on the importance of protecting against inadvertent disclosure, as well as disclosure to individuals who would later be placed in the difficult position to suppress confidential information when the individuals were planning competitive strategies against Micron, Plaintiff takes the position that disclosure should be limited to members of Defendants' litigation team that would not be placed into such a situation. Plaintiff points [*20] out that a member of the in-house legal department that Defendants have identified as one that should be allowed access to confidential materials is also a Vice President of Intellectual Property whose duties include decisions on litigation strategies as well as competitive decision making responsibilities. Based upon the identities and corporate responsibilities of those that Defendants have indicated should be allowed access to Plaintiff's confidential information, as well as the proposed safeguards and scope of disclosure, Plaintiff takes the position that disclosure should be limited to members of Defendants' litigation group. Finally, Plaintiff asserts that while Defendants maintain that in-house members of their legal department must be granted access to confidential information in order to make informed choices regarding litigation and settlement strategies, they have not established why it cannot effectively create strategies when such information is disclosed to members of Defendants' outside litigation group.

Plaintiff's proposed protective order is characterized as a highly restrictive measure aimed at defeating Defendants' ability to discover information that is central [*21] to the resolution of the instant dispute and to prevent them from determining the direction that should be taken by requiring them to make key determinations without the benefit of considering all of the relevant facts. In order to prevent against the unintentional disclosures that Plaintiff fear, as well as allow them the opportunity to discover highly relevant and necessary information, De-

fendants propose that confidential information could be provided to their in-house legal department only at the supervision of their outside litigation team and that the in-house attorneys and corporate representatives would not be allowed to take possession of the material. Further, Defendants propose that the sensitive information Plaintiff seeks to protect could only become discoverable once the information is referenced in a court filing, was involved in a patent claim chart or is contained on invention-related documents, such as inventor diaries or journals.

In *Brown Bag Software*, the Ninth Circuit "turned to *U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984),* as the leading authority on protective orders distinguishing between outside and in-house counsel." *960 F.2d* [*22] *at 1470.* In *U.S. Steel*, the United States Court of Appeals for the Federal Circuit concluded that in order to resolve the risk of improper use of confidential information "a court should examine the factual circumstances of any counsel's relationship to the party demanding access." *Id.* Important to the Federal Circuit in *U.S. Steel* was "whether in-house counsel was involved in 'competitive decisionmaking.'" *Id.* Competitive decisionmaking was described "as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel, 730 F.2d 1465, 1468 n.3.* "Thus, proper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure by any counsel, whether in-house or retained. Further, the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures factors into decisions on the propriety of such [*23] protective orders." *Brown Bag, 960 F.2d at 1470.*

Having given careful and deliberative review to the resolution of the instant conflicting motions for protective orders, the Court concludes that Plaintiff's proposed protective order restricting access to confidential information only to outside litigation counsel should be granted. Plaintiff seeks to protect against unintended disclosures of highly sensitive and valuable confidential information in order to maintain a competitive edge in the computer industry. However, in addition to Plaintiff's compelling reason in support of its proposed protective order, Defendants have offered an important and compelling justification to allow access to certain members of its in-house legal department in order to allow them the opportunity to make well informed litigation and settlement decisions in light of all of the applicable relevant facts. Viewing the conflicting compelling justifications offered by the respective parties, the Court concludes that access should be limited to outside litigation counsel in order to achieve an appropriate balance of the competing interests. As pointed out by Plaintiff, individuals that Defendants seek to [*24] gain access to confidential information are engaged in competitive decision-making that, if allowed access to such information, would be required to compartmentalize and suppress such information. Because both parties are represented by highly competent and experienced litigators that will be in a position to advise their clients of litigation and settlement strategies with full knowledge of all of the relevant facts, the Court concludes that access to confidential information by members of Defendants' in-house legal department is inappropriate in the instant action. Accordingly, Plaintiff's motion for protective order is granted and Defendants corresponding motion is denied.

Plaintiff shall submit an original Protective Order, consistent with this Order, for signature along with copies for dissemination to the respective parties within ten days after receipt of this Order.

**D. Plaintiff's Motion to Compel (Docket No. 54)**

Plaintiff moves the Court to compel Defendants to answer interrogatories propounded pursuant to its First Set of Interrogatories, specifically, numbers two and three. Pursuant to the discovery requests, Plaintiff seeks information relating to positions [*25] asserted in Defendants Answer and Counter-Claim to Plaintiff's Complaint. Plaintiff points out that it is seeking the information that Defendants presently possess that support the contentions included in their pleadings before this Court.

Defendants take the position that Plaintiff is attempting to improperly narrow the issues before the Court by requiring them to answer discovery requests that will require them to take premature legal and factual positions. In this regard, Defendants assert that the discovery requests are premature and that the Court should allow additional time within which to conduct further discovery before requiring it to presently take practically irreversible legal and factual positions.

Plaintiff asserts that it is not attempting to lock Defendants into legal or factual positions, but is simply seeking to require Defendants to provide discovery that indicates the factual support for matters that are contained in the pleadings before this Court.

As previously noted, Rule provides that "parties may obtain discovery regarding any manner, not privileged, which is relevant to the subject matter involved in the pending action ... [and that] the information [*26] sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Fed. R. Civ. P. 26(b)(1).* Defendants have not objected to the discovery sought by

Plaintiff as seeking irrelevant information. After review-ing the positions taken by the respective parties, as well as a representation by Plaintiff that it is not attempting to force Defendants to take factual or legal positions that they would not be able to supplement, correct or modify at a later date, the Court concludes that Defendants should be required to answer Plaintiff's discovery requests. Ac-cordingly, Plaintiff's motion to compel is granted and Defendants shall respond to such requests within fifteen days after receipt of this Order.

**E. Defendants' Motion for Protective Order (Docket No. 70)**

Defendants move the Court to enter a protective order pursuant to Rule 26(c) which indicates that notices of depositions served prior to the disposition of Defendants' motion to stay are premature and that the notices are op-pressive and unduly burdensome prior to the resolution of the ITC action. Accordingly, Defendants move the Court to postpone [*27] the depositions until such time as the Court rules on the motion to stay and the hearing before the ITC is completed.

Inasmuch as the Court has determined that the four patent infringement claims filed both in the instant action as well as before the ITC shall be stayed pending resolu-tion of the ITC dispute. To the extent that Defendants' motion for protective order seeks to prevent the taking of deposition that are related to those four claims, the motion is granted. However, the Court has also determined that the remaining seven claims filed in the instant action do not implicate the same issues as the claims before the ITC and has concluded that, in its discretion, discovery on those remaining seven claims should not be stayed pending resolution of the ITC action. As a result, to the extent that Plaintiff's notices of deposition relate to the remaining seven patent infringement claims not subject to the Court's stay, the instant motion for protective order is denied.

**III.**

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Defendants' Motion to Stay (Docket No. 17) is GRANTED IN PART AND DENIED IN PART.

2. Plaintiff's Motion to Strike under *F.R.Civ.P.* [*28] *12(f)* or for a More Definite Statement under *F.R.Civ.P. 12(e)* (Docket No. 26) is DENIED AS MOOT.

3. Plaintiff's Motion for Entry of a Protec-tive Order under *Fed.R.Civ.P. 26(c)* (Docket No. 49) is GRANTED.

4. Plaintiff's Motion to Compel Responses to Interrogatories Nos. 2 and 3 of Micron's First Set of Interrogatories (Docket No. 54) is GRANTED.

5. Defendants' Motion for Protective Order (Docket No. 70) is GRANTED IN PART AND DENIED IN PART.

6. Defendants' Motion for Entry of a Pro-tective Order (Docket No. 92) is DENIED.

7. Plaintiff's Motion to Strike under *F.R.Civ.P. 12(f)* or for a more Definite Statement under *F.R.Civ.P. 12(e)* (Docket No. 30, Case No. CV 98-294-S-MHW) is DENIED AS MOOT.

SO ORDERED this 31st day of March, 1999.

LARRY M. BOYLE

UNITED STATES MAGISTRATE JUDGE

# EXHIBIT F

ORGANON TEKNIKA CORPORATION, Plaintiff, v. HOFFMANN-LA ROCHE,
INC., ROCHE BIOMEDICAL LABORATORIES, INC., AND LABORATORY
CORPORATION OF AMERICA HOLDINGS, Defendants.

1:95CV00865

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
NORTH CAROLINA, GREENSBORO DIVISION

*1997 U.S. Dist. LEXIS 3798*

February 19, 1997, Decided
February 19, 1997, FILED

DISPOSITION: [*1] Plaintiff's Motion to Stay as to the '774 patent GRANTED [Doc. # 33]. Defendants' Cross Motion to Stay as to the '182 and '995 patents [Doc. # 35 and 36] and Motion to Stay all proceedings [Doc. # 39] DENIED. Defendants' Cross Motion for a prompt hearing on the previously filed motion for a stay of all proceedings is moot [Doc. # 50].

COUNSEL: For ORGANON TEKNIKA CORPORATION, plaintiff: LAURA BERNSTEIN LUGER, MOORE & VAN ALLEN, DURHAM, NC. ANDREW B. COHEN, MOORE & VAN ALLEN, DURHAM, NC.

For HOFFMANN-LAROCHE, INC., defendant: ALEXANDER L. MAULTSBY, SMITH HELMS MULLISS & MOORE, GREENSBORO, NC. BYNUM M. HUNTER, SMITH HELMS MULLISS & MOORE, GREENSBORO, NC. JAMES L. GALE, SMITH HELMS MULLISS & MOORE, RALEIGH, NC. RICHARD W. ELLIS, SMITH HELMS MULLISS & MOORE, RALEIGH, NC. JONATHAN ARTHUR BERKELHAMMER, SMITH HELMS MULLISS & MOORE, GREENSBORO, NC. GREGORY GERALD HOLLAND, SMITH HELMS MULLISS & MOORE, GREENSBORO, NC. For ROCHE BIOMEDICAL LABORATORIES, INC., defendant: JAMES L. GALE, (See above). RICHARD W. ELLIS, (See above). For LABORATORY CORPORATION OF AMERICA HOLDINGS, defendant: JAMES L. GALE, (See above). RICHARD W. ELLIS, (See above).

For LABORATORY CORPORATION OF AMERICA [*2] HOLDINGS, counter-claimant: JAMES L. GALE, SMITH HELMS MULLISS & MOORE, RALEIGH, NC. RICHARD W. ELLIS, SMITH HELMS MULLISS & MOORE, RALEIGH, NC.

For ORGANON TEKNIKA CORPORATION, counter-defendant: ANDREW B. COHEN, MOORE & VAN ALLEN, DURHAM, NC.

For HOFFMANN-LAROCHE, INC., counter-claimant: JAMES L. GALE, SMITH HELMS MULLISS & MOORE, RALEIGH, NC. RICHARD W. ELLIS, SMITH HELMS MULLISS & MOORE, RALEIGH, NC.

For ORGANON TEKNIKA CORPORATION, counter-defendant: ANDREW B. COHEN, MOORE & VAN ALLEN, DURHAM, NC.

JUDGES: N. Carlton Tilley, Jr., United States District Judge

OPINION BY: N. Carlton Tilley, Jr.

OPINION:

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's and Defendants' motions to stay the proceedings. Plaintiff filed a Motion to Stay as to the '774 patent [Doc. # 33]. Defendant then filed a Cross Motion to Stay as to the '182 and '995 patents [Doc. ## 35 and 36]. Defendants then filed another Motion to Stay all proceedings [Doc. # 39]. For the reasons set forth below, Plaintiff's Motion to Stay as to the '774 patent [Doc. # 33] is GRANTED. Defendants' Motions to Stay [Doc. ## 35, 36, and 39] are DENIED. Defendants' Cross Motion for a prompt [*3] hearing on the previously filed motion for a stay of all proceedings is moot [Doc. # 50].

I.

Plaintiff filed its complaint on December 13, 1995 alleging that Defendants infringed upon Plaintiff's United States patent Number 5,234,809 ('809). Plaintiff also wanted a declaratory judgment finding that Plaintiff did

# EXHIBIT G

SIGHTING SYSTEM INSTRUMENTS, LLC, a Texas limited liability company, ET AL., Plaintiffs, vs. PRESTIGE LAW ENFORCEMENT, INC., a Georgia corporation, ET AL., Defendants.

CIVIL ACTION NO. 3:05-CV-1560-G ECF

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

*2006 U.S. Dist. LEXIS 64698*

September 11, 2006, Decided
September 11, 2006, Filed

**SUBSEQUENT HISTORY:** Stay denied by *Cheng v. Sighting Sys. Instruments, LLC, 2007 U.S. Dist. LEXIS 33118 (N.D. Ga., May 3, 2007)*

**COUNSEL:** [*1] For Sighting System Instruments LLC, a Texas limited liability company, Good Sportsman Marketing LLC, a Texas limited liability company, Plaintiffs: Eric W Buether, Christopher M Joe, Eric S Tautfest, Greenberg Traurig - Dallas (Ross Ave), Dallas, TX.

For Prestige Law Enforcement Inc, a Georgia corporation, Amstech Incorporated, a Georgia corporation, Defendants: Dorian Bruce Kennedy, ? Baker Donelson Bearman Caldwell& Berkowitz, Atlanta, GA; Truman E Spring, Jr, Spring Law Firm, Dallas, TX.

**JUDGES:** A. JOE FISH, CHIEF JUDGE.

**OPINION BY:** A. JOE FISH

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of Prestige Law Enforcement, Inc. ("Prestige") and Amstech, Inc. (collectively, "the defendants") to stay and administratively close the proceedings in this case. For the reasons discussed below, the motion is denied.

### I. BACKGROUND

On August 8, 2005, Sighting System Instruments, LLC ("SSI") and Good Sportsman Marketing, LLC ("GSM") (collectively, "the plaintiffs") filed this action seeking a declaration that the plaintiffs do not infringe *U.S. Patent No. 6,622,414* ("the '414 patent"). *See* Defendants' Motion and Supporting Memorandum to Stay Case and Administrative [*2] Closure and Extension of Time to File Responsive Pleading to the Complaint ("Defendants'

Motion") at 1. SSI manufactures the SSI laser bore sighter -- the product at issue in this case -- and GSM is a distributor of the product. *See* Plaintiffs' Response to Defendants' Motion to Stay ("Plaintiffs' Response") at 3. GSM is a distributor of the SSI laser bore sighter. *Id.*

On or about July 28, 2005, Prestige contacted SSI and GSM and accused them of infringing the *'414 patent*. *See* Plaintiffs' Response at 3. Accordingly, on August 5, 2005, SSI filed this suit seeking a declaration that SSI has not infringed the *'414 patent*. *Id.* at 4. GSM joined the suit, seeking the same declaration, three days later. *Id.*

On September 14, 2005, the defendants filed with the United States Patent and Trademark Office ("USPTO") a "request for reissue" of the *'414 Patent*. *See* Reissue Patent Application Transmittal, *attached to* Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Stay ("Defendants' Reply"). As originally issued, the *'414 patent* contains at least one independent claim and several dependent claims. * In their reissue application, the patent applicants [*3] seek to add two additional independent claims to the *'414 patent*. Defendants' Reply at 2.

> * The plaintiffs allege that the *'414 patent* contains only one independent claim, Plaintiffs' Response at 5-6, but the defendants contend there are two, Defendants' Reply at 2.

The defendants filed the present motion on September 15, 2005, seeking a stay and administrative closure of this case pending the USPTO's resolution of their application for reissuance of the *'414 Patent*.

### II. ANALYSIS

#### A. Legal Standard

A district court has wide discretion to stay a pending matter in order to control its docket and benefit the interests of justice. *In re Ramu Corporation, 903 F.2d 312,*

Case 1:07-cv-00054-JJF     Document 27-3     Filed 06/13/2007     Page 5 of 15

Page 2
2006 U.S. Dist. LEXIS 64698, *

*318 (5th Cir. 1990).* The decision to grant or deny a stay "is a matter of judgment and it is reviewed by the Court of Appeals only for abuse of discretion." *Exxon Corporation v. St. Paul Fire & Marine Insurance Company, 129 F.3d 781, 784 (5th Cir. 1997).* Moreover, the court's discretion to order a stay clearly [*4] includes the authority to stay a matter pending the resolution of proceedings in the USPTO. *See Gould v. Control Laser Corporation, 705 F.2d 1340, 1341 (Fed. Cir.), cert. denied, 464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir.1988).*

When determining whether to stay litigation pending resolution of proceedings by the USPTO, courts should consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corporation v. 3Com Corporation, 69 F. Supp. 2d 404, 406-07 (W.D. N.Y. 1999).* An affirmative answer to the first and third questions weighs against granting a stay, and an affirmative answer to the second question weighs in favor of a stay. Each of the factors in this three part test, which the court will refer to as the "*Xerox* test," is analyzed below.

B. Application of the "Xerox Test"

1. *Would a stay unduly prejudice the plaintiffs?*

The plaintiffs [*5] contend the uncertainty caused by a stay will cause them harm in several ways. First, they allege that the uncertainty raised by the defendants' allegations of infringement may create difficulty pricing products that include the laser bore sighter since the plaintiffs are unsure whether they will be required to pay royalties on the product. *See* Plaintiffs' Response at 11. Second, the plaintiffs note that SSI would suffer harm if it decides to invest money in efforts to design around the *'414 patent* and the court later determines there was no infringement. *Id.* Third, the plaintiffs argue that the defendants' threats to file suit against the plaintiffs' customers will have an adverse effect on the plaintiffs' sales. *Id.* The plaintiffs summarize their argument by noting that a stay would, in some ways, defeat their purpose in filing this case. "Eliminating this uncertainty and harm is the very reason that Plaintiffs brought this declaratory judgment action." *Id.*

The defendants respond to the plaintiffs' arguments regarding prejudice by urging that a stay of this suit may eliminate the need for a "potential second infringement action." *See* Defendants' Reply at 2-3. However, [*6] the *potential* for a later suit based on the reissued patent that *might* include new claims if they are accepted by the USPTO does not eliminate the very real prejudice the

plaintiffs are suffering due to the uncertainty surrounding the defendants' claims of infringement.

The plaintiffs are trying, through prosecution of this action, to alleviate the harm caused by the defendants' allegations of infringement. A stay delaying this suit indefinitely would clearly prejudice the plaintiffs. Consequently, the first part of the *Xerox* test militates against granting a stay.

2. *Will a stay simplify the issues in question and the trial of the case?*

The second part of the *Xerox* test requires the court to examine the effect, if any, the proceedings pending before the USPTO will have on this case. In their motion, the defendants argue that there will be several benefits if this case is stayed until the USPTO has rendered a decision on the application for reissue. They contend a stay will: (1) give experts at the USPTO the opportunity to analyze all relevant prior art; (2) alleviate discovery problems based on the USPTO's decisions; (3) make the case moot if the patent is invalidated; [*7] (4) encourage settlement based on the USPTO's action; (5) provide a record from the USPTO that will reduce the length and complexity of the litigation; (6) limit the issues, defenses and evidence relevant to this case; and (7) reduce costs to the parties and the court. Defendants' Motion at 3-4.

The plaintiffs respond that the issues will not be simplified in the manner described by the defendants because the reissue proceedings involve the addition of new claims that can only broaden the scope of the patent rather than simplify and limit the issues before the court. Plaintiffs' Response at 8-9. To support this argument, the plaintiffs maintain that the defendants improperly rely on cases involving applications for reexamination and disputed applications for reissue rather than cases involving unopposed applications for reissue. *Id.* at 9-10. Such cases are different from the case before this court because reexamination proceedings and disputed reissue proceedings generally involve a challenge to the validity of an existing patent. See *Patlex Corporation v. Mossinghoff, 758 F.2d 594, 601-02 (Fed. Cir. 1985)* (discussing the purpose of the reexamination statute); [*8] *National Tractor Pullers Association, Inc. v. Watkins, 205 U.S.P.Q. 892, 910-11 (N.D. Ill. 1980)* (discussing a contested reissue proceeding). The present case, by contrast, involves a reissue proceeding initiated by the patentees in order to correct errors they identified in their own patent so that they can broaden its scope. *See* Defendants' Motion at 2; Defendants' Reply at 2.

Furthermore, the plaintiffs emphasize that they are not challenging the validity of the patent in this case; they are simply seeking a determination that their product does not infringe the *'414 patent.* Plaintiffs' Response at 9. Because the validity of the *'414 patent* is not being ex-

amined, the USPTO will not have the opportunity to invalidate the *'414 patent* and make this case moot. Nor will the USPTO limit the issues for the court to review in determining whether the plaintiffs' product infringes the *'414 patent*, since the USPTO's inquiry will focus on expanding, rather than limiting, the scope of the patent. Finally, the USPTO should have already analyzed the relevant prior art during the original prosecution of the *'414 patent*, thereby creating a record for this court to consider [*9] in determining whether the plaintiffs' product infringes on the patent.

Because the reissue application merely seeks to add new claims to the *'414 patent*, the plaintiffs posit that "whatever the outcome of the reissue proceeding, the same case and controversy that exists today will remain after the conclusion of that proceeding." *Id.* The defendants concede that the reissue application seeks to add additional claims but argue that the issues will be simplified by a stay because the addition of new claims to the patent may lead to another case if this one is resolved before the reissue proceedings are complete. Defendants' Reply at 2.

The defendants' argument lacks merit. There are two possible outcomes if the USPTO reissues the *'414 patent*: (1) the reissued patent will be identical, or substantially identical, to the original patent; or (2) the reissued patent will contain two additional independent claims, which the defendants may then allege are also infringed by the plaintiffs' product.

If the claims in the reissued patent remain identical, or substantially identical, to the original claims, then the reissued patent is simply a continuation of the original patent. *35 U.S.C. § 252* [*10] . As a result, a cause of action based on reissued claims that are substantially identical in the original patent claims will remain unaffected by the patent's reissuance. A stay under this scenario would needlessly delay this cause of action while having no effect on its outcome.

The alternative scenario is that the reissued patent will add claims to the original *'414 patent* and broaden the scope of that patent. If the patent is broadened in such a way, the plaintiffs will be protected by the doctrine of intervening rights. See *Seattle Box Company, Inc. v. Industrial Crating and Packing Inc., 756 F.2d 1574, 1578-79 (Fed. Cir. 1985)*; *Southern Saw Service, Inc. v. Pittsburgh-Erie Saw Corporation, 239 F.2d 339, 342 (5th Cir. 1956), cert. denied, 353 U.S. 964, 77 S. Ct. 1047, 77 S. Ct. 1048, 1 L. Ed. 2d 914 (1957)*. This doctrine protects those who make, purchase, offer to sell, or use anything patented by the reissued patent that was not included in

the original patent. *35 U.S.C. § 252*. Thus, the defendants' claim that an action may be filed for infringement of the potential new claims of the reissued patent after the present case is resolved is unpersuasive. [*11] A stay under this scenario would also needlessly delay the plaintiffs' cause of action while having no effect on its outcome.

Because the defendants' pending proceedings with the USPTO will not substantially simplify or affect the issues in this case or the trial of this case, the second part of the *Xerox* test tilts toward denial of the defendants' motion for stay.

*3. Have the parties completed discovery and has a trial date been set?*

The defendants correctly assert that "this case is not in an advanced stage of litigation." Defendants' Reply at 3. As the defendants point out, no answer or dispositive motions have been filed, discovery has not yet commenced, and a trial date is nowhere in sight. Even so, these facts do not add much weight to the defendants' request for a stay. Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference -- that a suit in the early stages should weigh heavily in favor of a stay -- is not true. As a case progresses through the stages of litigation, the grant of a stay generally becomes more costly to the parties and to the court. Yet, just as the absence of a negative inference [*12] does not create a positive inference, so also the lesser cost of granting a stay early in the litigation process does not equate to a factor favoring a stay; the lower cost simply indicates the best time to grant a stay is in the early stages of litigation.

III. CONCLUSION

As noted above, the first two factors of the *Xerox* test weigh against granting a stay, and the third factor provides little, if any, weight in favor of a stay. Accordingly, the defendants' motion to stay and administratively close the case is **DENIED.**

In accordance with the court's order of January 4, 2006, the defendants shall answer or otherwise respond to the plaintiffs' amended complaint within 20 days of this date.

**SO ORDERED.**

September 11, 2006.

A. JOE FISH

CHIEF                                              JUDGE

# EXHIBIT H

SYNGENTA SEEDS, INC., Plaintiff, v. MONSANTO COMPANY, DEKALB GENETICS CORP., PIONEER HI-BRED INTERNATIONAL, INC., DOW AGROSCIENCES, LLC, and MYCOGEN PLANT SCIENCE, INC. and AGRIGENETICS, INC., collectively d.b.a. MYCOGEN SEEDS, Defendants.

C.A. No. 02-1331-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2004 U.S. Dist. LEXIS 17821*

August 27, 2004, Decided

**SUBSEQUENT HISTORY:** Motion granted by *Syngenta Seeds, Inc. v. Monsanto Co., 2004 U.S. Dist. LEXIS 18712 (D. Del., Sept. 8, 2004)*

**DISPOSITION:** [*1] Plaintiff's motion to consolidate denied.

**COUNSEL:** For SYNGENTA SEEDS INC., plaintiff: Paul M. Lukoff, Prickett, Jones & Elliott, Wilmington, DE.

For MONSANTO COMPANY, DEKALB GENETICS CORP, PIONEER HI-BRED INTERNATIONAL INC., DOW AGROSCIENCES LLC, MYCOGEN PLANT SCIENCES, INC., AGRIGENETICS, INC., d.b.a. Mycogen Seeds, defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On July 25, 2002, plaintiff Syngenta Seeds, Inc., filed a complaint alleging defendants infringed three of its patents ("BTC I"). (D.I. 1) Discovery in the BTC I action concluded on July 14, 2004, and the case is scheduled for a jury trial on November 29, 2004. (D.I. 228)

As a result of past motions, this court has excluded allegations regarding plaintiff's product MON863 and refused to allow discovery of pending patent applications. (D.I. 213, 81)

On April 13, 2004, plaintiff filed another complaint against defendants ("BTC II") for infringement of *United States Patent No. 6,720,488* ("'488 patent"), which is not at issue in the BTC I litigation. Before the court [*2] is plaintiff's motion to consolidate BTC II with the BTC I litigation. (D.I. 205)

**II. BACKGROUND**

On December 9, 2003, the United States Patent and Trademark Office ("PTO") issued a Notice of Allowance, which allowed the '488 patent to issue as soon as the issue fee was paid. On April 13, 2004, the PTO issued the '488 patent. The next day plaintiff filed its BTC II complaint against defendants alleging infringement of the *'488 patent*. The action was filed with this court, Civ. No. 04-228, and marked as related to the BTC I litigation.

Prior to filing this motion to consolidate, plaintiff complied with Local Rul 7.1.1 and requested that defendants consent to the consolidation. Defendants refused and this pending motion resulted.

Plaintiff alleges that, after the issuance of the Notice of Allowance, it notified defendants Monsanto and DeKalb that an additional patent application was pending and provided them with a copy of the allowed patent claims and notice. Defendants contest this assertion and note that the claims of the *'488 patent* were not included in discovery or depositions, including those taken after the PTO issued the allowance notice. (D.I. 215 at 5)

The *'488* [*3] *patent* has the following in common with the patents at issue in BTC I:

(1) *'488* was the result of a continuation patent application of '100 patent;

(2) It relates to the expression of Bt genes in corn;

(3) The specifications for the '100 and *'488 patents* are "virtually identical" (D.I. 206);

(4) Both the '100 and *'488* inventions were created by the same inventors; and

(5) The *'488 patent* is terminally disclaimed over the '100 and '185 patents.

## III. DISCUSSION

*Federal Rule of Civil Procedure 42(a)* provides this court with authority to consolidate "actions involving a common question of law or fact ... pending before the court." Whether or not to consolidate cases is at the discretion of the district court, but often courts balance considerations of efficiency, expense and fairness. See *United States v. Dentsply Int'l, Inc., 190 F.R.D. 140, 142-43 (D. Del. 1999).* Because the *'488 patent* involves the expression of Bt genes in corn, an interpretation of the patent and any infringement necessarily involves some of the same questions at issue in the BTC I action. n1 At issue in this [*4] motion is whether, at this stage in the BTC I litigation, it is too late to consolidate the cases without adding undue delay to an already ripe BTC I case.

n1 Plaintiff cites the following commonalities: (1) parties; (2) products at issue; (3) underlying technology; (4) documents/exhibits; (5) legal claim (patent infringement); (6) defendants will likely assert the same defenses; (7) the patent at issue in BTC II shares similarities with the patents at issue in BTC I; and (8) the same people will be witnesses in both actions. (D.I. 206 at 4-5)

Plaintiff argues that consolidating the cases will not prejudice the defendants because the November 29, 2004, trial date can be adjusted, and that consolidation is more efficient because the parties will not have to litigate the same issues twice. Defendants contest consolidation on four grounds: (1) consolidation will complicate the proceedings; (2) will lead to delay and increased costs because the new patent will require discovery on the same level as the discovery [*5] that took place in BTC I (notably the discovery went on for more than a year and a half); (3) the consolidation prejudices them because, if plaintiff had disclosed the *'488 patent* when the notice of allowance was issued, the defendants could have included it in their subsequent discovery; and (4) the efficiency realized through consolidation can be achieved through other means, namely staying the BTC II action and application of claim preclusion.

The BTC I case is scheduled to go to trial this November. At this point in time, and in light of the courts already tight schedule, the trial date could not be rescheduled without undue delay. In addition, the BTC I case alone is highly complex. Adding another patent to the plaintiff's claims will only increase the case's complexity and make it that much harder for a jury to come to a resolution. For all of these reasons, the court concludes that consolidation of the two cases would be more burdensome than beneficial.

## IV. CONCLUSION

Therefore, at Wilmington this 27th day of August, 2004;

IT IS ORDERED that plaintiff's motion to consolidate (D.I. 205) is denied.

8/27/04

Sue L. Robinson

United States District Judge [*6]

# EXHIBIT I

ZOETICS, INC. and ZOEMAIL, LLC, Plaintiffs, v. YAHOO!, INC., Defendant.

Civil Action No. 06-108-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2006 U.S. Dist. LEXIS 46910*

**July 6, 2006, Decided**

COUNSEL: [*1] Josy W. Ingersoll, Esquire, Karen L. Pascale, Esquire, and Elena C. Norman, Esquire of YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, Delaware. Of Counsel: Paul K. Vickrey, Esquire, Douglas M. Hall, Esquire, and Frederick: C. Laney, Esquire, of NIRO, SCAVONE, HALLER & NIRO, Chicago, Illinois, for Plaintiff.

Mary B. Graham, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware. Of Counsel: Michael A. Jacobs, Esquire, of MORRISON & FOERSTER LLP, San Francisco, California. Matthew M. D'Amore, Esquire, and Kyle W.K. Mooney, Esquire, of MORRISON & FOERSTER LLP, New York, New York, for Defendants.

For Zoemail LLC, Plaintiff: Karen L. Pascale, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE.

JUDGES: Joseph J. Farnan Jr., District Judge.

OPINION BY: Joseph J. Farnan Jr.

OPINION:

### MEMORANDUM OPINION

July 6, 2006
Wilmington, Delaware

Joseph J. Farnan Jr.
**Farnan, District Judge.**

Pending before the Court is Defendant's Motion To Stay Action And Transfer Action To The Southern District Of New York. (D.I. 10.) For the reasons set forth below, the Court will deny the Motion.

### BACKGROUND

Plaintiffs ZoEmail, a Delaware limited liability company, and [*2] Zoetics, a New York corporation, filed this action seeking damages, attorneys' fees, and injunctive relief from Defendant, a Delaware corporation, for its alleged infringement of two patents Plaintiffs recently purchased from AT&T, Inc. (D.I. 1.) On October 20, 2004, sixteen months before filing its Complaint, Zoetics filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York. According to Defendant, Zoetics' resort to bankruptcy was spurred at least partially by its inability to pay AT&T for the patents it purchased. (D.I. 11 at 5.) In Bankruptcy Court, Zoetics announced its intention to emerge from bankruptcy by "realizing value from its Intellectual Property" by first "seeking a license with certain significant parties which have infringed upon its intellectual property" and thereafter retaining counsel to sue for infringement. (D.I. 13, Ex. 8 at 2-3.) According to Defendant, it is one of the "significant parties" to which Zoetics was referring. (D.I. 11 at 7.)

AT&T has filed a secured claim against Zoetics in Bankruptcy Court based on a purported security interest it retained in the Patents-in-Suit. Plaintiffs dispute the validity [*3] of AT&T's secured claim. (D.I. 16 at 4-5.) Meanwhile, the Bankruptcy Court has granted Zoetics leave to retain counsel to pursue its intellectual property claims. (D.I. 13, Ex. 10 at 4.)

### DISCUSSION

### I. Motion to Stay Action

Defendant contends that the Court should stay this action until the ownership of the Patents-in-Suit is resolved in the New York Bankruptcy Court because it will simplify the issues before this Court, it will not unduly prejudice Plaintiffs, and this proceeding is still at an early stage. Plaintiffs respond that no litigation regarding the ownership of the Patents-in-Suit is pending in the New York Bankruptcy Court, and that they would be prejudiced by a stay at this time. Because there is no indication that the issue of patent ownership will be imminently resolved in the Bankruptcy Court and because granting a stay will prejudice Plaintiffs, the Court will deny Defendant's Motion to Stay.

### A. Legal Standard

A Court has the "inherent power to conserve judicial resources by controlling its own docket," *Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985),* and the decision to stay a case is firmly within [*4] the discretion of the Court. Pegasus Development Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, at *3 (D. Del. May 14, 2003). In ruling on a motion to stay, courts are guided by three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." 2003 U.S. Dist. LEXIS 8052, at *3-4 (quoting *Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999))f.*

### B. Analysis

Defendant is arguing for a stay pending a decision regarding ownership of the Patents-in-Suit by the Bankruptcy Court. Defendant bases its argument on a claim filed by AT&T, an alleged secured creditor of Zoetics. Leaving aside the fact that Plaintiffs dispute the validity of the secured claim (D.I. 16 at 4-5), Defendant has not pointed to any precedent granting a stay under such circumstances. Furthermore, there is nothing to indicate when the Bankruptcy Court will take up the issue of ownership, or even if it plans to do so at all. In fact, the Bankruptcy Court has allowed Zoetics [*5] to retain special intellectual property counsel to "prosecut[e] enforcement actions regarding the Intellectual Property Rights" (D.I. 13, Ex. 9 at 2), though Zoetics ultimately made plain its intention to recover on its intellectual property as part of its emergence strategy. (D.I. 13, Ex. 8 at 2.)

Defendant contends that granting a stay in this case will advance the objective of judicial economy (D.I. 11 at 10) without prejudicing Plaintiffs. ( Id. at 12.) The Court disagrees. Staying the action pending a non-parallel proceeding in which the issue in question may be addressed n1 leaves too much uncertainty to substantially advance judicial economy. The Bankruptcy Court has not evidenced an intention to take up the patent ownership issue; rather, it permitted Zoetics to retain patent counsel in order to pursue its claims.

---

n1 Defendant repeatedly insists that the issue of patent ownership will be addressed by the Bankruptcy Court (D.I. 20 at 3) but can offer no support for that assertion except to say that Zoetics defaulted on its payment to AT&T and the latter has filed a secured claim in the Bankruptcy Proceeding. (Id.) All of the case law Defendant cites, on the other hand, involves pending proceedings

that are either parallel, *Summa Four, 994 F. Supp. 575 at 581,* or directly related to the issue in dispute. *Landis v. N. Am. Co., 299 U.S. 248, 57 S. Ct. 163, 81 L. Ed. 153 (1966); Commissariat a L'Energie Atomique v. Dell Computer Corp., 2004 U.S. Dist. LEXIS 9107, 2004 WL 1554382 (D. Del. May 13, 2004).*

[*6]

A secured claim in a bankruptcy proceeding, furthermore, is not tantamount to a challenge to Zoetics' patent ownership. Zoetics has announced its intention to sue on its patents to emerge from bankruptcy (D.I. 13, Ex. 8 at 2), and the Bankruptcy Court has not objected. It is therefore conceivable that, even if AT&T has a genuine secured claim, Zoetics could win a patent infringement suit, pay AT&T from the proceeds, and retain the patents. Granting a stay pending the resolution of the bankruptcy proceedings would prejudice Zoetics by preventing it from carrying its reorganization plan to completion in a timely fashion.

The Court concludes that granting a stay would not simplify the issues in this case with such certainty as to substantially advance judicial economy, and that it would prejudice and disadvantage Plaintiffs. Because neither of these factors weighs in favor of granting a stay, the Court is not persuaded that a stay is warranted because the case is still at an early stage. Accordingly, the Court will deny Defendant's Motion to Stay Action.

### II. Motion to Transfer Action

Defendant argues that substantial practical considerations, as well as other private and [*7] public factors, strongly favor transferring the action to the Southern District of New York. Plaintiffs contend that Defendant has not met its burden of clearly showing that transfer is appropriate. Because the Court agrees with Plaintiffs that the factors do not weigh heavily in favor of transfer, it will deny Defendant's Motion to Transfer.

### A. Standard of Law

28 U.S.C. § 1404 (a) permits a court to transfer a case to any other district where it might have been brought n2 "for the convenience of parties and witnesses" or "in the interest of justice." The purpose of the statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 316 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964).* In considering a § 1404 (a) transfer, the Court must balance a number of private and public interests. *Reyno v. Piper Aircraft Co., 630 F.2d 149, 159 (3d Cir. 1980).* The relevant private interests are:

(1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the [*8] expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

*Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995).* The relevant public interests are:

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of the trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

Id. When ruling on a motion to transfer, a court must "balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed." Stratos Lightwave, Inc. v. E20 Communications, Inc., 2002 U.S. Dist. LEXIS 5653, at *5 (D. Del. Mar. 26, 2002). The moving party has the burden to establish that "the balance of interests [*9] strongly weighs in favor of the transfer," and the transfer will be denied if the factors balance evenly or weigh only slightly in favor. Id.

n2 It is undisputed that this action could have been brought in the Southern District of New York. (D.I. 11 at 13.)

B. Practical Considerations

Defendant first contends that the public interests of practical considerations and judicial efficiency strongly favor transfer because the District Court for the Southern District of New York will be "better positioned to manage the case if and when it is appropriate to proceed." (D.I. 11 at 15.) Defendant also argues that judicial efficiency militates for transfer because Defendant may have to ask the Bankruptcy Court to lift the automatic litigation stay to allow it to pursue counterclaims or file for reexamination of the Patents-in-Suit, a decision that would be reviewed by the District Court for the Southern District of New York. (Id. at 15-16.) Finally, Defendant argues that the transferee court would be better [*10] positioned to adjudicate any standing disputes with regard to ownership of the patents, since it would have already heard any related appeals from the Bankruptcy Court. (Id. at 16.)

The Court concludes that these considerations do not weigh strongly in favor of transfer. As an initial matter, many of Defendant's arguments rely on the proposition that the issue of patent ownership will be imminently resolved by the Bankruptcy Court, which the Court concluded, supra, is not the case. Moreover, while this Court has previously transferred an action to a district where a Chapter 11 case was pending, it did so in large part because the case depended on the interpretation of orders already issued by the transferee judge, and because the case involved administrative claims inextricably intertwined with the bankruptcy proceeding. Bank of America, N.A. v. US Airways, Inc., 2005 U.S. Dist. LEXIS 34902, at *8-9 (D. Del. Dec. 21, 2005).

In this case, there are no existing rulings by Defendant's proposed transferee court that are necessary to resolve the issues. Nor are the details of Zoetics' reorganization plan currently relevant, since the plan has not been filed yet. [*11] (See D.I. 11 at 12.) Ownership of the patents-in-suit has not been challenged in the New York courts, and there is no parallel litigation already in progress. Most importantly, the bankruptcy proceeding is before the Bankruptcy Court, not the District Court, and were a transfer to be granted, the patent infringement case would not be heard by the judge who will be overseeing Zoetics' Chapter 11 case. Defendant attempts to avoid this problem by insisting that judicial efficiency would be advanced because the District Court "would have already heard any related appeals" (Id. at 16), but such speculation does not weigh strongly in favor of transfer. Defendant's argument that Defendant will need to petition the Bankruptcy Court to lift or modify the automatic litigation stay in order to file counterclaims or auxiliary claims runs into the same problem, and the argument that the District Court in the Southern District of New York would hear those appeals is again unpersuasive.

While it may have been marginally more expedient for this case to have been brought in the Southern District of New York, the considerations presented by Defendant do not militate in favor of transfer so [*12] as to outweigh Plaintiffs' choice of forum. Simply put, the Court can find no compelling reason why the District of Delaware is not an appropriate venue to resolve the issue of patent ownership. In fact, a resolution of the ownership dispute in this Court could as easily assist the Bankruptcy Court in carrying out its function.

Case 1:07-cv-00054-JJF    Document 27-3    Filed 06/13/2007    Page 14 of 15

Page 4
2006 U.S. Dist. LEXIS 46910, *

C. Convenience and Availability of Non-Party Witnesses

Defendant argues that the convenience of non-party witnesses weighs strongly in favor of transfer. "Convenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate." Memminger v. Infocure Corp., 2000 U.S. Dist. LEXIS 22077 at *12-13 (D. Del. Nov. 14, 2000). Though the convenience of the non-party witnesses is only an issue to the extent that the witnesses "may actually be unavailable for trial," Mentor Graphics Corp. v. Quickturn Design Sys., 77 F. Supp. 2d 505, 510 (D. Del. 1999), "it is sufficient for purposes of venue transfer analysis if the witness is not subject to a Court's subpoena power." Nilssen v. OSRAM Sylvania, Inc., 2001 U.S. Dist. LEXIS 25570, at *8 (D. Del. [*13] May 1, 2001); see also Anic v. DVI Fin Servs., 2004 U.S. Dist. LEXIS 11562, at *8 (D. Del. June 23, 2004). The Court has the power to subpoena a witness who can be served within its District, or at a place within 100 miles of the courthouse. Fed. R. Civ. P. 45(b)(2).

Most of the witnesses whose convenience Defendant claims strongly favors transfer are located in AT&T's Florham Park, New Jersey facility or in Berkeley Heights, New Jersey. (D.I. 11 at 18-20.) However, Defendant admits that both of these locations are within 100 miles of Wilmington, Delaware using a straight-line measurement. (Id. at 19.) Defendant argues that their presence still militates in favor of transfer because using an "ordinary and usual travel route" measurement puts them outside of the Court's subpoena power while they would be within the subpoena power of the transferee court by any measure. (Id. at 21.) Thus, transferring would "avoid later disputes." (Id. at 21.) There is, however, no genuine dispute that Delaware courts apply the modern approach, which measures "distance by a straight line on a map," as this method is the better construction of Rule 45 and is easier to apply [*14] in practice. Hill v. Equitable Bank, Nat'l Ass'n, 115 F.R.D. 184, 186 (D. Del. 1987). By contrast, the cases cited by Defendant in favor of the "ordinary and usual travel route" approach are more than 50 years old and are from district courts outside of Delaware. (D.I. 11 at 20.) Thus, the Court concludes that these witnesses are within the subpoena power of the Court and considered available to testify for the purposes of venue transfer.

Defendant also asserts that two of the attorneys involved in prosecuting the Patents-in-Suit are outside the subpoena power of this Court, but within the subpoena power of the New York court, weighing heavily in favor of transfer. Defendant claims that these witnesses would testify to issues of claim construction and the validity and enforceability of the Patents-in-Suit.

In response, Plaintiffs argue that Defendant has not shown with sufficient specificity why the witnesses' testimony would be necessary, and that Defendant has not shown that either would be reluctant to travel to Delaware in order to testify. As to the first argument, the Court concludes that Defendant may have its reasons for calling the prosecuting attorneys, [*15] given the attorneys' first-hand involvement in prosecuting the patents and their knowledge thereof. (See D.I. 13, Ex. 17 and 18.) As to the second, Defendant bears no burden to show that the witnesses it plans to subpoena would be "reluctant" to testify. "It is sufficient... [that] the witness is not subject to a Court's subpoena power." Nilssen, 2001 U.S. Dist. LEXIS 25570, at *8. Thus, the Court concludes that the convenience of the prosecuting attorneys is a factor weighing in favor of transfer.

D. Convenience of the Parties

Defendant argues that because Plaintiffs' principal place of business is mere blocks away from the District Court for the Southern District of New York, the convenience of the parties weighs in favor of transfer. However, "a plaintiff's choice of forum is a paramount consideration not to be lightly disturbed." Mentor Graphics, 77 F. Supp. 2d. at 509. Furthermore, while the plaintiff's choice of forum is generally given less deference where the plaintiff has not chosen his home turf, a defendant's incorporation in the chosen forum is "a rational and legitimate reason for choosing the forum" that cannot be disregarded. [*16] Stratos, 2002 U.S. Dist. LEXIS 5653, at *6-7. Having incorporated in the forum state, the defendant "should not now complain that another corporation has chosen to sue it here." 2002 U.S. Dist. LEXIS 5653 at *7.

Defendant in this case is incorporated in Delaware and admits that "neither Delaware nor the Southern District of New York is significantly more convenient than the other" for itself. (D.I. 11 at 24). Thus, the convenience of Defendant is not a factor weighing in either direction. As for the convenience of Plaintiffs, they have chosen the forum of Defendant's incorporation a "rational and legitimate" choice that is entitled to deference. Stratos, 2002 U.S. Dist. LEXIS 5653, at *7. The Court concludes that the convenience of the parties does not weigh in favor of transfer.

E. Local Interest in the Controversy

Finally, Defendant argues that because Zoetics is in bankruptcy in the Southern District of New York, the local interest in the controversy weighs in favor of transfer. However, as discussed supra, the bankruptcy proceeding and the patent infringement suit are neither identical nor parallel controversies. Further, as Defendant acknowledges, "[p]atent [*17] rights are not local or state matters and therefore cannot give rise to a local controversy, or

2006 U.S. Dist. LEXIS 46910, *

implicate local public policy." Stratos, 2002 U.S. Dist. LEXIS 5653 at *8; see also Trilegiant Loyalty Solutions, Inc. v. Maritz, Inc., 2005 U.S. Dist. LEXIS 2825, at *8 (D. Del. Feb. 15, 2005). Therefore, the Court concludes that the Southern District of New York does not have a local interest in the controversy.

F. Conclusion

Although "[c]onvenience of the expected trial witnesses is the most important factor to consider when determining whether or not transfer is appropriate," Memminger, 2000 U.S. Dist. LEXIS 22077 at *12-13, the Court concludes that the potential unavailability of the attorneys who prosecuted the patent - the sole factor weighing in favor of transfer - is insufficient to overcome the "paramount" consideration of Plaintiffs' choice of forum. Mentor Graphics, 77 F. Supp. 2d. at 509. Plaintiffs had a legitimate reason for choosing to sue in Delaware, and Defendant has not carried its burden of negating that choice. Accordingly, the Court will deny Defendant's Motion to Transfer Action to the District [*18] Court for the Southern District of New York.

## CERTIFICATE OF SERVICE

I, John M. Seaman, hereby certify that on June 13, 2007, I caused to be electronically filed a true and correct copy of the notice of the foregoing **Plaintiff Renesas Technology Corp.'s Answering Brief in Opposition to Defendants' Motion to Consolidate and Stay** with the Clerk of Court by CM/ECF which will send notification of such filing to the following counsel of record:

> Timothy Devlin, Esquire
> FISH & RICHARDSON, P.C.
> 919 N. Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE  19801

> _/s/ John M. Seaman_
> John M. Seaman (#3868)

{BMF-W0043894.}